# THE STATE OF INDIANA v. TUCKER.

[No. 21,633. Filed November 29, 1910.]

1. INCEST.—*Definition.*—The word "incest" imports an act of unlawful intercourse between persons so nearly related that their marriage would be unlawful. p. 717.
2. INCEST.—*Common Law.*—*Ecclesiastical Law.*—Incest was not a crime by the common law, though it was punishable by the ecclesiastical courts. p. 717.
3. MARRIAGE.—*Husband and Wife.*—*Contracts.*—Marriage in Indiana is declared to be a civil contract. p. 718.
4. MARRIAGE. —*Relationship Forbidden. —Cousins.* —Cousins are kindred related collaterally by descent from a common ancestor— but not a brother nor sister; and under the marriage statute (§8357 Burns 1908, §5324 R. S. 1881), the word implies relationship by consanguinity—the ordinary meaning thereof. p. 718.
5. MARRIAGE.—*Canon Law.*—*Incest.*—*Statutes.*—The canon law of England was never a part of the law of this State; and the crime of incest is purely statutory. p. 719.
6. INCEST.—*Relationship by Affinity.*—*Legislative Powers.*—The legislature has the power to make punishable as incest the marriage of persons related only by affinity. p. 720.
7. STATUTES.—*Criminal.*—*Construction.*—Criminal statutes must be strictly construed. p. 720.

8.  INCEST.—*Relationship by Affinity.*—*Statutes.*—Under §2352
Burns 1908, Acts 1907 p. 101, providing that "if any uncle * * *
shall have sexual intercourse with his * * * niece, * * * he
shall be guilty of incest," an uncle who has intercourse with the
daughter of his wife's sister is not guilty of incest.  p. 720.

From Crawford Circuit Court; *C. W. Cook,* Judge.

Prosecution by The State of Indiana against James H.
Tucker. From a judgment for defendant, the State appeals. *Affirmed.*

*James Bingham,* Attorney-General *A. G. Cavins, E. M.
White* and *W. H. Thompson,* for the State.

*John H. Luckett* and *W. T. Zenor,* for appellee.

MONTGOMERY, J.—Appellee was charged with the crime of
incest, in having had sexual intercourse with his niece,
knowing her to be such. He filed a special answer averring
that his alleged niece was not related to him by consanguinity, but was the daughter of his wife's sister, both of
whom were living. The State's demurrer to this answer
was overruled, and, electing to stand upon such demurrer,
the accused was discharged, and the State appealed and
has assigned this ruling as error.

The propriety of the practice adopted to present the legal question involved has not been challenged, and we shall
assume that the matter is properly before us for decision.

The relevant parts of the statute upon which this prosecution was based are as follows: * * * "If any uncle
or aunt shall have sexual intercourse with his or her niece,
or nephew, having knowledge of his or her relationship, or
if any nephew or niece shall have sexual intercourse with
his or her aunt or uncle, such nephew or niece being over
the age of sixteen years and having knowledge of his or her
relationship, he or she shall be guilty of incest, and, on
conviction, shall be imprisoned in the State prison not less
than two nor more than twenty-one years, or may be imprisoned in the county jail not less than six months nor
more than one year." Acts 1907 p. 101, §2352 Burns 1908.

The precise question for determination is whether sexual intercourse between an uncle and niece, related only by affinity, is incestuous within the meaning of this statute.

1. Incest is broadly defined as "sexual intercourse between persons so nearly related that marriage between them would be unlawful." Standard Dict.

2. Marriage between persons nearly related is prohibited in every Christian country, and incest has been forbidden, to some extent, by general custom from the earliest times, and by peoples very little advanced in civilization. It is generally agreed that a marriage between persons in the direct lineal line of consanguinity, and also between brother and sister, are unlawful as against the law of nature, independent of any church canon or statutory prohibition. This inflexible rule arises from the institution of the family, the basis of civilized society, and, the rights, duties, habits and affections flowing from that relation. Family intermarriages and domestic licentiousness would inevitably confuse parental and filial duties and affections, and corrupt the moral sentiments of mankind. Christian nations generally, going beyond the family circle, and following with greater or less accuracy the Levitical law, have, by specific enactment, prohibited marriages between more remote collateral kindred related either by blood or marriage. Incestuous marriages or relations were not formerly punished criminally in England, but such marriages were subject to dissolution and annulment. Incest was not a crime at common law, but was within the cognizance of, and punishable by the ecclesiastical courts. 1 Blackstone's Comm. 434; *Bolen* v. *People* (1900), 184 Ill. 338, 56 N. E. 408; *State* v. *Smith* (1878), 30 La. Ann. 846; *State* v. *Slaughter* (1879), 70 Mo. 484; *State* v. *Keesler* (1878), 78 N. C. 469; *State* v. *Jarvis* (1891), 20 Ore. 437, 26 Pac. 302, 23 Am. St. 141; *Tuberville* v. *State* (1849), 4 Tex. 128.

In this State, "marriage is declared to be a civil con-

tract, into which males of the age of eighteen and females of the age of sixteen, not nearer of kin than second cousins, and not having a husband or a wife living, are capable of entering." §8357 Burns 1908, §5324 R. S. 1881.

Cousins are kindred, related collaterally by descent from a common ancestor—but not a brother or sister. The kin mentioned in this statute are related by the tie of consanguinity, and that is the primary and ordinary meaning of the word. In *Supreme Council, etc.,* v. *Bennett* (1890), 47 N. J. Eq. 39, 43, the court said: "The phrases 'related to,' 'relations,' and 'next of kin,' whether used in a statute, will or contract, have, by a perfectly uniform course of decision, been held to include only relations by blood, and not connections by marriage, not even a husband or a wife. Bacon, Ben. Soc. §260a; 2 Williams, Executors (6th Am. ed.) 1118 bottom; *Esty* v. *Clark* [1869], 101 Mass. 36; *Kimball* v. *Story* [1871], 108 Mass. 382." Disabilities to marriage have been divided into two classes, canonical and civil, but the only disabilities existing in this country are civil. The marriage of a man to the daughter of his deceased wife's sister would not be unlawful under the provisions of our statute, relating to marriage, heretofore quoted. But in England, such a marriage was held to be within the Levitical degrees, and in violation of the canon law. *Ellerton* v. *Gastrell* (1720), 1 Comyns 318. A table of kindred and persons related by affinity, who by Scripture and the laws of England could not intermarry, was published by authority in 1563, and this table was adopted in 1603 as the ninety-ninth canon by a convocation acting in pursuance of license under the great seal to agree upon such canons as they approved. This table declared the marriage of a man to the daughter of his wife's sister incestuous and unlawful. Shelford, Marriage and Div. p. 147, note h. The letter of the Levitical law did not prohibit such marriages, but they were

held by the ecclesiastical courts to come within its spirit, since marital intercourse between blood kindred, related in the same degree, was therein forbidden. In the more recent English cases examined, involving criminal incest between uncle and niece, the relationship is shown to be by blood. *Burgess* v. *Burgess* (1804), 1 Hagg. Con. 384; *Griffiths* v. *Reed* (1828), 1 Hagg. Ecc. 195.

The canon law of England was never a part of the law of this State, but the crime of incest is purely statutory. In that jurisdiction the marriage of a man to his deceased wife's sister is regarded as incestuous, but it is otherwise in this State. An early statute provided "that male persons of the age of fourteen years, and female persons of the age of twelve years, and not prohibited by the laws of God, may be joined in marriage." Acts 1818 p. 224. The section penalizing incest was as follows: "If any person shall be guilty of incest, the person or persons so offending shall upon conviction, be publicly whipped not exceeding fifty stripes, and fined in any sum not exceeding $1,000." Acts 1818 p. 75, §63. While these statutes were in force, it was held that charging a man with having had illicit intercourse with his wife's sister, did not constitute a charge of incest. *Dukes* v. *Clark* (1826), 2 Blackf. 20. The statutes of other states shed no light on the question before us, since they generally provide in terms that the relationship must be by consanguinity to constitute incest, or, as in Ohio, specifically include relationship by affinity. All the cases decided by state courts involving the crime of incest between uncle and niece, which we have been able to find, disclose a relationship by blood. *State* v. *Reedy* (1890), 44 Kan. 190, 24 Pac. 66; *State* v. *Guiton* (1899), 51 La. Ann. 155, 24 South. 784; *Weisberg* v. *Weisberg* (1906), 98 N. Y. Supp. 260; *State* v. *Harris* (1908), 149 N. C. 513; *Shelly* v. *State* (1895), 95 Tenn. 152, 49 Am. St. 926; *State* v. *James* (1907), 32 Utah

152; *State* v. *Dana* (1887), 59 Vt. 614; *State* v. *Pennington* (1896), 41 W. Va. 599.

Mr. Story in his work, Story, Conflict of Laws (8th ed.) §115, says there is a clear and just moral difference between the marriage or sexual intercourse of persons related by consanguinity and that of persons related only by affinity. It is, of course, within the power of the legislature to inhibit marriages and to punish carnal intercourse as incestuous between persons related only by affinity. The immediate question is whether the General Assembly of Indiana has included relations by affinity in the prohibitions of this act. The act is penal, and therefore its terms must be strictly construed. In its primary sense "niece" means and is understood to include relationship by consanguinity. The crime of incest, as we have seen, has grown out of the violations of marriage restrictions. The statute defining criminal incest should accordingly be construed in connection with that prescribing qualifications for marriage. Our statute governing marriages does not prohibit a marriage between uncle and niece by affinity, and some of the reasons forbidding incestuous relations do not apply to such a union. We are brought to the conclusion, therefore, that to constitute the crime of incest by uncle and niece under the provisions of the act under consideration, they must be such kindred by the ties of consanguinity.

It follows that the court did not err in discharging appellee, and the judgment is affirmed.