COMMONWEALTH *vs.* ESA G. ASHEY & another.

Suffolk.   January 7, 1924. — February 29, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & WAIT, JJ.

*Incest.   Half Blood.*

By the provisions of G. L. c. 207, §§ 1, 2; c. 272, § 17, a marriage of a man
to the daughter of his sister of the half blood is a crime punishable under
G. L. c. 272, § 17.

INDICTMENT, found and returned on August 11, 1923,
charging Esa G. Ashey and Teresa D. Beneditti with incest.

In the Superior Court, the case was tried before *Keating,* J.
Material evidence, findings and proceedings in the Superior

Court, as shown in a report by the trial judge after a verdict of guilty, are described in the opinion.

*A. F. Flint*, for the defendants.

*M. Caro*, Assistant District Attorney, for the Commonwealth.

DeCourcy, J.    The defendants were indicted under G. L. c. 272, § 17, which provides: " Persons within the degrees of consanguinity within which marriages are prohibited or declared by law to be incestuous and void, who intermarry or have sexual intercourse with each other, shall be punished . . . ." It was admitted that they went through a ceremony of marriage on December 18, 1922, that they lived together as husband and wife and that they had sexual intercourse. The jury returned a verdict of guilty against both, and answered specially that the relationship of the male defendant to the mother of the female defendant was that of brother and sister of the half blood.    In other words Teresa Beneditti is Ashey's niece of the half blood.    The question of law raised by the report depends primarily on the proper construction of G. L. c. 207, §§ 1, 2, providing that " No man shall marry his . . . sister's daughter " and " No woman shall marry her . . . mother's brother."

This statute prohibiting certain marriages has come down from c. 2 of Prov. Laws of 1695–6.    Section 1 of said c. 2 contains an elaborate enumeration of the prohibited degrees. It was apparently modeled on the table of degrees established by Archbishop Parker in 1563, which in turn was based upon the Levitical degrees, the source of the law of incest. See Gibson's Codex Juris Ecclesiastici Anglicani, vol. 1, 414. This table prohibits marriage between a man and his sister's daughter, among others.    The leading case expounding the ecclesiastical law as it was deemed to be at the time (1722) is *Butler* v. *Gastrill*, Gilbert's Reports, 156.    See also as to the early law, L. R. A. 1916, C. 690.    2 Kent's Com. (13th ed.) 82–85.    Bac. Abr. (1852) vol. 6, 455–460.

It was said in *Butler* v. *Gastrill*, *supra*, at page 158, " And when we consider who are prohibited to marry by the *Levitical* Law, we must not only consider the mere Words of the Law itself, but what, from a just and fair Interpreta-

tion, may be deduced from it." And the English courts have held that the prohibition applies where the relation is that of the half blood. *Regina* v. *Brighton*, 1 B. & S. 447. *Mette* v. *Mette*, 28 L. J. (N. S.) Part 3, 117. On the basis of these cases it is said in 16 Halsbury's Laws of England, 284, " In reference to the prohibited degrees, relationship by the half blood is a bar to marriage equally with relationship by the whole blood. . . ." And Bishop in his Mar., Div. & Sep. vol 1, § 748, states " The relationship by half blood is the same in these cases as by whole blood; so that, for example, it is incestuous for a man to marry the daughter of his brother of the half blood, or the daughter of his half-sister." When our original law was enacted in 1695–6, it seems reasonable to assume that the interpretation of the ecclesiastical law as it then existed in England was adopted, treating the half-blood relation like the whole blood. See Schouler, Mar., Div., Sep. & Dom. Rel. (6th ed.) vol. 1, § 16. Bishop, Mar., Div. & Sep. vol. 1, § 756. And no substantial change in the underlying doctrine involved appears in our subsequent statutory law.

No Massachusetts case has been called to our attention which decides whether the half blood is to be treated on a par with the whole blood in a prosecution for incest under our statutes. The decisions in other States, however, support the contention of the Commonwealth. In *State* v. *Wyman*, 59 Vt. 527, it was held that the word " brother " in the statute against incest, includes a brother of the half blood: and a conviction of the defendant, who committed the offence with a daughter of his half-brother, was sustained. In *Shelly* v. *State*, 95 Tenn. 152, the defendant was convicted on a charge of incestuous intercourse with the daughter of his half-sister: the statute forbidding such intercourse with " the daughter of his brother or sister . . . " *State* v. *Reedy*, 44 Kans. 190, involved a charge of incestuous cohabitation with the daughter of the defendant's half-brother. The conviction was upheld: the court stating " The language employed by the legislature is to be interpreted according to its common meaning, and when the terms ' uncle ' and ' niece ' are viewed in that light they will include the half-

brother of the father and the daughter of a brother of the half blood. They are more closely allied in blood than some of those who are specifically mentioned in the statute as being within the forbidden degrees; and this to some extent indicates the meaning and purposes of the legislature." The defendant in *The People* v. *Jenness*, 5 Mich. 305, was convicted of incest with the daughter of his sister. It was said by Christiancy, J. (page 318), " The charge is sexual intercourse between persons within the degrees of consanguinity within which marriages are prohibited. By reference to the statute prescribing these degrees . . . it will be seen that no man is permitted to marry his sister's daughter, and no woman her mother's brother. And we think it quite clear that such marriages are equally prohibited whether the parties or their parents are legitimate or illegitimate, or of the whole or the half blood." See also *State* v. *Guiton*, 51 La. Ann. 155. *Williams* v. *McKeene*, 193 Ill. App. 615. In *Burdue* v. *Commonwealth*, 144 Ky. 428, the defendant was found guilty of the crime of incest with his half sister. The judgment was affirmed. The court said (page 432), " We are clearly of opinion that the word ' sister,' as used in the statute under consideration, applies to and includes a half sister. So that one who carnally knows his half sister is as much guilty of incest as though she were a sister of the full blood." *Campbell* v. *Crampton*, 8 Abb. N. C. 363, involved primarily the conflict of laws. The action was for breach of contract of marriage. The plaintiff was a half-sister of the defendant's mother. The court said (page 373), " The case is to be considered as though the parties were nephew and aunt; as relatives of the half blood are, equally with those of the whole blood, included in those degrees of consanguinity within which marriages are deemed incestuous."

In view of this uniform line of authorities, we are of opinion that the defendants come within the prohibition of said G. L. c. 272, § 17. The fact that the Legislature has expressly provided in our statute of descent and distribution (G. L. c. 190, § 4) that children of the whole and half blood shall inherit equally, is not in conflict with this conclusion. That

statute was enacted for a limited purpose. As was said of a similar statute in *State* v. *Wyman, supra,* (page 528), " It did not undertake to affect the relations of brethren of the half-blood any further than to prescribe, for certain reasons having their origin in the ancient system of feudal tenures, that in the descent of the inheritance a brother of the half-blood should be left out."

The jury were warranted in finding the defendants guilty; and in accordance with the terms of the report, the verdict is to stand.

*So ordered.*