[Crim. No. 12008. In Bank. July 15, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS C. BAKER, Defendant and Appellant.

---

[*]Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Richard S. Buckley, Public Defender, Charles A. Maple, Clive Martin and James J. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—On October 26, 1966, after a trial without a jury, defendant was convicted of violating Penal Code section 285, incest. The court dismissed a second count charging a violation of Penal Code section 261, subdivision 3, forcible rape.

It was stipulated that the prosecutrix, defendant's niece, is

related to him only by the half blood; that is, her mother is defendant's half sister.

Defendant's principal contention is that Penal Code section 285's prohibition against fornication by an uncle and his niece does not apply where they are related by the half blood.

Section 285, enacted in 1872 and amended only in 1921, provides, "Persons being within the degrees of consanguinity within which marriages are declared by law to be incestuous and void, who intermarry with each other, or who commit fornication or adultery with each other, are punishable by imprisonment in the state prison not less than one year nor more than fifty years."[1] Civil Code section 59, enacted in 1872 and never amended, provides: "Marriages between parents and children, ancestors and descendants of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces or aunts and nephews, are incestuous, and void from the beginning, whether the relationship is legitimate or illegitimate."

■ In construing a criminal statute, a defendant "must be given the benefit of every reasonable doubt as to whether the statute was applicable to him." (*In re Zerbe,* 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840].) ■ The sanctions of Penal Code section 285 apply to sexual relations only when, pursuant to Civil Code section 59, the act occurs "between parents and children, ancestors and descendants of every degree, and between brothers and sisters *of the half as well as the whole blood,* and between uncles and nieces. . . ." (Italics added.) The phrase, "of the half as well as the whole blood" obviously refers to brothers and sisters. It cannot be interpreted to also modify "uncles and nieces" for it is a well established rule of construction that "relative or modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases." (*People* v. *Ortiz,* 86 Cal. App.2d Supp. 937, 938 [195 P.2d 82]; also e.g., *County of Los Angeles* v. *Graves,* 210 Cal. 21, 26 [290 P. 444]; *Grant* v. *Hipsher,* 257 Cal.App.2d 375, 383 [64 Cal.Rptr. 892]; *City of Santa Barbara* v. *Maher,* 25 Cal.App.2d 325, 327 [77 P.2d 306].) ■ It follows that the Legislature by expressly including relationships between brothers and sisters of the half blood and not so specifying as to more distant relatives

---

[1]The 1921 amendment (Stats. 1921, ch. 101, p. 96, § 1) only changed the penalty from a maximum of 10 years imprisonment to a minimum of one year and maximum of 50 years imprisonment.

has evinced the intention to exclude such persons from the prohibitions of the statute. (*State* v. *Bartley*, 304 Mo. 58, 63 [263 S.W. 95]; cf. *In re Hubbard*, 62 Cal.2d 119, 126-127 [41 Cal.Rptr. 393, 396 P.2d 809].)

The Attorney General argues that *People* v. *Womack*, 167 Cal.App.2d 130 [334 P.2d 309, 72 A.L.R.2d 703], is controlling. Under parallel circumstances, the Court of Appeal affirmed a conviction under Penal Code section 285, stating that "the great weight of authority is adverse to defendant's contention. We are in accord with the prevailing view that the statutory prohibition applies to the relationship here involved." (*Id.* at p. 131.)

Undeniably, the great weight of authority is in accord with the result reached in *Womack*. (Note, 72 A.L.R.2d 706.) These decisions are consonant with the English ecclesiastical law declaring a marriage between an uncle and niece of the half blood to be incestuous.(*Regina* v. *Brighton*, 1 B. & S. 446; 121 Eng. Rep. 782; *Oxhenham et ux.* v. *Gayre*, 6 Bac.Abr., Mar. & Div. 460.) However, the crime of incest is governed by specific statutes in every American jurisdiction (Note, *supra*, 72 A.L.R.2d 706), and the relevant decisions must be considered in the context of the statutory scheme peculiar to the particular state.

Clearly inapplicable are decisions in those jurisdictions where the statute expressly prohibits marriages between uncles and nieces of the half blood. (E.g., *Griffin* v. *State*, 83 Tex.Crim. 157 [202 S.W. 87].)

More commonly, the statute condemns various relationships without specifying the "wholeness" of the blood as to any of them. In all reported decisions construing such a statute, the courts have extended its bans to uncles and nieces of the half blood by reasoning that "uncle" in ordinary usage of the word includes a person of the half blood, and/or that under other statutes, relatives of the half blood are given the same legal status as those of the whole blood. (E.g., *People* v. *Binger*, 289 Ill. 582 [124 N.E. 583]; *State* v. *Lamb*, 209 Iowa 132 [227 N.W. 830]; *Commonwealth* v. *Ashey*, 248 Mass. 259 [142 N.E. 788]; *People* v. *Jenness*, 5 Mich. 305; *Shelly* v. *State*, 95 Tenn. 152 [31 S.W. 492, 49 Am.St.Rep. 926]; *State* v. *Wyman*, 59 Vt. 527 [8 A. 900, 59 Am.Rep. 753].) Either rationale is inapposite where the statute, as is true of Civil Code section 59, specifically deals with some half blood relations and not with others.

Lastly, there are those jurisdictions with statutes similar to

Civil Code section 59, expressly including a brother and sister of the half blood, but silent as to more distant relatives. The decisions of three states were relied on by the Court of Appeal in *Womack*. In *State* v. *Reedy*, 44 Kan. 190, 193 [24 P. 66], the applicable statute, unlike California's, extended its prohibitions to first cousins. The court affirmed the conviction fallaciously reasoning that an uncle and niece of the half blood are more closely allied than some of the whole blood relationships forbidden.[2] *State* v. *Guiton*, 51 La..Ann. 155 [24 So. 784], is inappropriate since the court admittedly relied on a canon of construction unique to the French civil law in interpreting the statute. In *State* v. *Harris*, 149 N.C. 513, 514 [62 S.E. 1090, 128 Am.St.Rep. 669], the court ingenuously concluded that the statute did not specify half bloods as to uncles and nieces since they "must of necessity be of the half blood," thereby failing to give the term its technical meaning.

On the other hand, the court in *State* v. *Bartley, supra,* 304 Mo. 58, 63, in interpreting Missouri's incest legislation which was also comparable to section 59 stated, "Both of these statutes mention brothers and sisters of the half as well as the whole blood. It is apparent that the Legislature in enacting these statutes had in mind relationships of the half as well as the whole blood, and if it intended the statutes to cover aunts and nieces of the half blood, why did it not say so? . . . When the Legislature mentioned brothers and sisters of the half blood it necessarily excluded all other relationships of the half blood."

The Attorney General contends that *Womack* correctly interprets Penal Code section 285 and Civil Code section 59 because it is claimed that these sections merely codify the common law. He further urges that the phrase "of the half as well as the whole blood" was only intended to assure that relationships between brothers and sisters of the half blood are forbidden and should not be interpreted to exclude relationships between uncles and nieces or aunts and nephews of the half blood.

The Attorney General misconceives the common law. "[T]he common law of England includes not only the *lex non scripta* but also the written statutes enacted by Parliament."

---

[2] When brothers and sisters have the same parents, their children, first cousins, will have *one-half* their "blood" in common. But, if brothers and sisters have only one parent in common, they share only *one-fourth* their "blood" with each other's children. Clearly, first cousins are more closely allied in "blood" than an uncle of the half blood and his niece.

(E.g., *Moore* v. *Purse Seine Net*, 18 Cal.2d 835, 838 [118 P.2d 1]; *Martin* v. *Superior Court*, 176 Cal. 289, 293 [168 P. 135, L.R.A. 1918B 313].) Incest was not a common law *crime* in England; punishment was left solely to the ecclesiastical courts.[3] (E.g., *People* v. *Stratton*, 141 Cal. 604, 608 [75 P. 166]; *Cecil* v. *Commonwealth*, 140 Ky. 717, 719 [131 S.W. 781, Ann.Cas. 1912B 501]; *State* v. *Jarvis*, 20 Ore. 437, 439 [26 P. 302, 23 Am.St.Rep. 141].)

The ecclesiastical courts followed the interdiction of Levitical law which prohibited marriages between persons more closely related than fourth cousins unless a dispensation was procured from the Church of Rome; no distinction was made between persons related by affinity or consanguinity. (E.g., *Butler* v. *Gastrill*, Gilb.Rep. 157-158; 25 Eng.Rep. 110-111; *State* v. *Tucker*, 174 Ind. 715, 718-719 [93 N.E. 3, Ann.Cas. 1913A 100].)

During the reign of Henry VIII and under his direction England broke away from the Church of Rome. Reforms were instituted to lessen the influence of the Pope and establish the independency of the Church of England. In 1540 legislation was enacted to correct "an unjust law of the bishop of Rome" relating to the degrees in which marriages were permitted. (32 Henry 8, c. 38.) The statute limited the prohibitions against marriage to relatives closer than first cousins. The ecclesiastical courts proclaimed the statute to be a return to "God's law"; however, the courts continued to make no distinction between consanguineous and affinal relatives.[4] (E.g., *Butler* v. *Gastrill, supra*, Gilb.Rep. 157-158; 25 Eng. Rep. 110-111; *Regina* v. *St. Giles in the Fields*, 11 Q.B. 173; 116 Eng.Rep. 441.)

The first deviation of the American jurisdictions from the English common law was to declare incest a crime. The statutes in defining the incestuous relationships departed from the ecclesiastical law in two respects. A majority of the states extended the criminal proscriptions to first cousins and beyond, while another group only imposed criminal penalties where the relationship was consanguineous. (Keezer, Marriage and Divorce (3d ed. 1946) §§ 171-172, pp. 220-222.)

---

[3]Incest was first made a crime in England in 1908. (Punishment of Incest Act, 8 Edw. 7, c. 45.)

[4]It was not until 1907 that a man was permitted to marry his deceased wife's sister (Deceased Wife's Sister's Marriage Act, 7 Edw. 7, c. 47, § 1) and until 1921 that a man was permitted to marry his deceased brother's widow (Deceased Brother's Widow's Marriage Act, 11-12 Geo. 5, c. 24).

In enacting Penal Code section 285, the California Legislature followed this latter policy of imposing criminal sanctions only when the persons are "within the degrees of *consanguinity* within which marriages are declared by law to be incestuous and void. . . ." (Italics added; cf. *People* v. *Kaiser,* 119 Cal. 456 [51 P. 702], holding that "daughter" as used in indictment means *natural* daughter.) This deviation from English law cannot be considered an oversight for in other statutes enacted in 1872 the Legislature carefully specified the nature of the relationship with which it was concerned. (E.g., Pen. Code, § 1074, subd. 1 ["consanguinity or affinity"]; Code Civ. Proc., § 602, subd. 2 ["consanguinity or affinity"]; Code Civ. Proc., § 1870, subd. 4 ["blood or marriage"].)

Thus, it is apparent that, contrary to the Attorney General's contention, California's criminal proscriptions against incest are not a codification of the common law. We therefore see no reason to disregard the plain meaning of Civil Code section 59 and adopt the strained, tortured construction urged by the Attorney General.

We conclude that the Legislature intended, and expressed its intent, to condemn sexual relations between persons related by the half blood only when they are brothers and sisters. "We must assume that the Legislature meant the section to be read as it was written. . . . We cannot create . . . an offense by enlarging the statute, or by inserting or deleting words, nor should we do so by giving a false meaning to its words. [Citations.] Such a practice makes it impossible for anyone to rely on the written word of the Legislature and only adds confusion to the already difficult task of drafting statutes." (*People* v. *Hallner,* 43 Cal.2d 715, 723-724 [277 P.2d 393]; dissenting opinion, Traynor, J. *People* v. *Womack, supra,* 167 Cal.App.2d 130, being inconsistent with fundamental canons of construction of criminal statutes, is disapproved.

In view of our decision that an uncle by the half blood cannot commit incest with his niece, it is not necessary to pass on defendant's other contention that the evidence is insufficient to support the conviction.

The judgment is reversed.

Traynor, C. J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Stephens in the opinion prepared by him for the Court of Appeal in *People* v. *Baker*, (Cal.App.) 65 Cal.Rptr. 150.