[Crim. No. 1006. Fifth Dist. Dec. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES WARREN RUSSELL, Defendant and Appellant.

## COUNSEL

Ray A. Yinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler and Marjory Winston Parker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARGANO, Acting P. J.**—Defendant was convicted of violating Penal Code section 285, incest. He was also charged with two counts of rape by force and fear, but the jury could not reach a unanimous verdict as to those counts and, by stipulation, a mistrial was declared on each count. Defendant appeals from the judgment entered on the jury's verdict finding him guilty of incest.

Defendant does not challenge the sufficiency of the evidence to support the jury's implied finding that he engaged in an act of intercourse with the prosecutrix nor does he deny that the girl is his niece and is related to him, at least by the half blood; he does not deny that the prosecutrix' mother is his half sister. ██ Defendant relies on the proposition that uncles and nieces who engage in sexual intercourse are not guilty of incest unless they are related by the full blood (*People* v. *Baker,* 69 Cal.2d 44 [69 Cal.Rptr. 595, 442 P.2d 675]), and he argues that the jury found him guilty of the crime charged because the court erroneously instructed them on the law. ██ The pivotal question raised by his argument is whether the conclusive presumption of legitimacy articulated in section 621 of the Evidence Code is applicable to a criminal prosecution for incest. The section reads as follows: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate."

██ Defendant is the son of Viola Adamson, and he and the prose-

cutrix' mother, defendant's older sister, were born during Viola's marriage to Oscar Russell. However, Mrs. Adamson testified that her husband left her in the early spring of 1942 and was gone until Christmas of that year; she said that defendant was born on April 23, 1943, after a normal nine-month pregnancy; her husband divorced her in 1944. On the other hand, Oscar Russell testified that he was living with his wife when she became pregnant with defendant and that he was having sexual relations with her when the child was conceived. He also testified that he was not getting along with Viola in 1942 and 1943 and that he knew that she was going out with other men.

After both sides rested their cases, the court in effect ruled that the presumption of legitimacy conclusively rebutted any inference which may have arisen as a result of Russell's testimony that he knew his wife was having affairs with other men while they were still living together. Because there was a conflict in the evidence as to whether the parties were cohabiting when the defendant was conceived, the court instructed the jury as follows: "Since it is not disputed that Oscar Russell was married to the defendant Charles Russell's mother and was potent at the time Charles Russell was conceived, if you find that Oscar and the defendant's mother, Viola Russell, were living together at that time, then I instruct you that as a matter of law you must find that Oscar Russell is the father of Charles Russell. You must not consider or discuss, nor should it enter into your deliberations in any way, whether or not Oscar Russell and Viola Russell Adamson actually engaged in sexual relations with each other or with any other persons at that time. If you have a reasonable doubt that they were living together at the time of Charles Russell's conception, then you are not bound to find that Oscar Russell is the father of defendant, Charles Russell." It is this instruction which forms the nucleus of defendant's contention that the jury was foreclosed from deciding the basic issue as to whether he was in fact the prosecutrix' uncle by the full blood.

██ We have not been cited, nor has our independent research un-covered, a decision by any court of this state in which the precise question presented in this appeal was discussed and considered. Nevertheless, in the early case of *People* v. *Koller*, 142 Cal. 621 [76 P. 500], the California Supreme Court, by implication at least, assumed that the conclusive presumption of legitimacy as then set forth in subdivision 5 of section 1962 of the Code of Civil Procedure (now Evid. Code, § 621) applied to the crime of incest. In that case defendant was charged with having committed incest with his daughter, and his sister-in-law testified that he had been away from the home for about a year before the child's birth. In commenting on the sister-in-law's testimony, the court stated that it was doubtlessly offered to overcome the conclusive presumption of legitimacy. Also, in

*People* v. *Hamilton*, 88 Cal.App.2d 398 [198 P.2d 907], there was a conflict in the evidence as to whether defendant, who was charged with two counts of incest upon the person of his 16-year-old daughter, was cohabiting with his wife when the girl was conceived. The appellate court held, sans discussion, that the jury's verdict finding him guilty as charged implied that they believed that he was not absent during the essential period of conception and therefore the conclusive, not the disputable, presumption applied.

The inescapable conclusion to be drawn from the *Koller* and *Hamilton* cases, that the conclusive presumption of legitimacy applies to criminal prosecutions, accurately reflects the law of this state. ■ The "so-called conclusive presumption is really not a presumption but rather a rule of substantive law" (*Jackson* v. *Jackson*, 67 Cal.2d 245, 247 [60 Cal.Rptr. 649, 430 P.2d 289]) and was adopted by the Legislature to preserve the integrity of the family and to avoid the social stigma associated with illegitimacy. (*Estate of McNamara*, 181 Cal. 82 [183 P. 552, 7 A.L.R. 313].) ■ If the presumption is founded on salutary public policy, and if it is in reality a rule of substantive law, it follows that Penal Code section 285 not only proscribes sexual intercourse between persons actually related by the prohibited blood lines, but also proscribes sexual intercourse between persons the law deems to be so related. It would be patently inconsistent to hold that in civil actions involving child support and other fundamental issues personal rights are subordinated to the rights of innocent children and valued social attitudes, but in a prosecution for incest the defendant may wantonly attack the integrity of a mother for alleged indiscretions long forgotten and may brutally challenge the legitimacy of the innocent child he may have seduced by turning the criminal prosecution into a full scale paternity suit. We decline to make this unwarranted and illogical distinction.

■ In holding that the presumption of legitimacy is applicable to a prosecution for incest, we are mindful that public opinion regarding illegitimacy may have changed in recent years and that it has been suggested that the presumption is an antiquated rule of law which should be abrogated or modified. (Robertson, *California's Conclusive Presumption of Legitimacy,* 19 Hastings L.J. 963.) ■ The determination as to whether social concepts have changed and whether a law should be modified to conform with social developments is a legislative, not a judicial, prerogative. ■ Yet, in 1965 when the California Legislature incorporated the presumption of legitimacy into section 621 of the Evidence Code, it did not see fit to make any changes even though the lawmaking body presumably was aware of the import of the *Koller* and *Hamilton* opinions. Instead it placed the presumption in a code which applies to both civil and criminal proceedings unless

a particular provision of that very code otherwise provides. (Evid. Code, §§ 100, 105.) Section 621 is not, by express terms, limited to civil actions, nor is there anything in the context in which it is used to so indicate.

■ Defendant next complains because the court modified the standard jury instruction regarding the necessity of knowledge (CALJIC No. 10.62) so that it read as follows: "It is a defense to a charge of incest that the defendant at the time of the alleged incestuous act had no knowledge of his *full* blood relationship to the other party to such act.

"If from all the evidence you have reasonable doubt as to the question whether defendant was ignorant of such relationship you must give him the benefit of that doubt and find him not guilty of incest."

He argues that by adding the word "full" to the instruction the judge, in essence, told the jury that he believed that defendant and the prosecutrix were uncle and niece by the whole blood.

The logic of appellant's argument escapes us. The court told the jury that "sexual intercourse between an uncle and niece by half blood is not incest." (*People* v. *Baker, supra*, 69 Cal.2d 44.) When the modified instruction is viewed in light of the *Baker* rule, it is clear that the court correctly informed the jury that in order to find defendant guilty of incest they not only had to find that he was related to the prosecutrix by the full blood but also that he knew that they were so related when he seduced her. ■ It is elementary, requiring no citation of authority, that instructions must be viewed as a whole and in light of other instructions given by the court to the jury.

■ Appellant's third attack on the judgment is that the court committed prejudicial error in permitting the prosecutor to impeach him by showing that he had been convicted of escape from the county jail. ■ He asserts that he received a jail sentence for that offense, and hence his conviction was for a misdemeanor, not a felony; it is settled beyond cavil that while a witness may be impeached by proof that he committed a felony, he cannot be impeached by proof that he committed a misdemeanor.

■ It is of course true that when an offense, such as escape from the county jail, is punishable by imprisonment in the state prison, or in the discretion of the court, by imprisonment in the county jail, it is the actual punishment ordered that determines whether the crime is a felony or misdemeanor; if the defendant is sentenced to state prison or granted probation, he is convicted of a felony; if he is sentenced to the county jail, other than as a condition of probation, the crime he committed is a misdemeanor. (*People* v. *Banks*, 53 Cal.2d 370, 381 [1 Cal.Rptr. 669, 348 P.2d 102];

*People* v. *Williams,* 27 Cal.2d 220 [163 P.2d 692]; *People* v. *Lippner,* 219 Cal. 395 [26 P.2d 457]; Witkin, Cal. Crimes (1963) § 40. p. 43.)

██ However, appellant goes outside of the record to support the allegation that he received a jail sentence for the offense in question; he relies on the probation report which was not offered in evidence and which is not before us at this time. ██ It is the rule that matters not part of the official record cannot be considered on appeal. (*People* v. *Doebke,* 1 Cal. App.3d 931 [81 Cal.Rptr. 391].)

██ In any event, although appellant's trial counsel made a motion at the beginning of the trial to suppress the evidence of appellant's conviction of escape from the county jail, the motion was predicated on the ground of relevancy; counsel did not at that time or at any time thereafter claim that defendant had received a jail sentence and was convicted of a misdemeanor instead of a felony. Under these circustances, the objection was waived and cannot be raised for the first time on appeal.

The judgment is affirmed.

Brown (G. A.), J., and Franson, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.