THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
JORGE MATÍAS BÁEZ, Defendant and Appellant.

No. CR-66-281.    Decided October 12, 1972.

*Santos P. Amadeo, Máximo Ortiz Ortiz,* and *Domingo Ríos Román* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

ON MOTION FOR RECONSIDERATION

PER CURIAM: Appellant was convicted of incest and sentenced to serve from one to three years in the penitentiary. He had sexual relations with his niece on his mother's side. At the time of the events he was 24 years and four months old and she was 17 years and four months old.

According to the testimony of the young girl at the trial the facts occurred in the following manner: She went to appellant's house to wash his clothes. When she finished washing them she went up to the house (evidently she washed them in the yard) and went to appellant's room. The latter was sitting on his bed reading a magazine. The young girl sat beside him and he invited her to have sexual relations with him. She answered that she did not dare. Appellant started to caress her, thing which she did not object to, and finally agreed to have sexual relations with him.

By Judgment of May 8, 1969, we affirmed the judgment appealed from. Appellant's motion for reconsideration having been heard, we advised the Solicitor General to discuss the following two points: (1) whether § 275 of the Penal Code, 33 L.P.R.A. § 1115, is unconstitutionally indefinite or vague, and (2) whether in this jurisdiction the relationship between half-blood uncles and nieces or aunts and nephews creates the incestuous relations penalized by the aforementioned § 275. On that date, February 10, 1970, we placed appellant on bond pending appeal.

This case makes us examine the situation as to whether a relation between half-blood uncle and niece falls within the provisions of § 275 of the Penal Code, 33 L.P.R.A. § 1115. Said section, which is derived from the Penal Code of 1902, provides the following:

"Persons being within the degrees of consanguinity within which marriages are declared by law to be void, who intermarry with each other, or who commit fornication or adultery with each other, are punishable by imprisonment in the penitentiary not exceeding ten years."

If the youths involved herein would have had their sexual relations in Puerto Rico some time before July 1, 1902, date when the Penal Code of that year became effective, said relationship would not have constituted a public offense. The Reformed Spanish Penal Code of 1870 extended to Cuba and Puerto Rico by Royal decree of May 23, 1879, by proposal of the Overseas Minister, Don Salvador de Abacete, in agreement with the Council of Ministers and by virtue of the power granted to the government by Art. 89 of the Spanish Constitution of 1876 governed in Puerto Rico before the aforementioned date. Said Spanish Penal Code, then in force in this country, did not make sexual relations between uncles and nieces or aunts and nephews a public offense even though, then, as well as now, and there as well as here, the Civil Code prohibited and prohibits intermarriage between them. See

§ 459 of the Penal Code of 1879 for Cuba and Puerto Rico, § 84 of the Spanish Civil Code, § 71 of the Civil Code of Puerto Rico (31 L.P.R.A. § 233).[1]

Furthermore, if the events had taken place *at the present time* in Spain, they would not have constituted a public offense either for although the Spanish Civil Code, like ours, as we said, prohibits intermarriage between uncle and niece, the sexual relations between them do not constitute an offense.[2] In Spain only the sexual relation of the male with his *sister or descendant* constitutes incest. See § 435 of the Spanish Penal Code in force revised in 1963; 4 Puig Peña, *Derecho Penal* 78 (6th ed. 1969) ; Quintano Ripolles, *Comentarios al Código Penal* 799 (2d ed. 1966).[3]

---

[1] The unabridged text of the Reformed Spanish Penal Code of 1870 extended to Puerto Rico in 1879, appears at volume 122 of the *Colección Legislativa de España*, printing house of the Ministerio de Gracia y Justicia, Madrid (1880), at p. 936 *et seq.* The Royal decree which extended it to Puerto Rico appears at page 927 of said volume and the Report of the Commission forwarding the proposal of the Penal Code for Cuba and Puerto Rico starts there. There is also a text published with the name of Penal Code of 1879 for the Islands of Cuba and Puerto Rico published in Havana in 1879.

[2] The intermarriage between uncles and nieces and nephews and aunts was not unknown during the 19th Century in Spain, and in the rest of Europe. The King of Spain, Fernando VII, married his niece, María Isabel, the second time, and later on he married the fourth time his niece María Cristina de Borbón. The one who later became Queen of Spain, Isabel II, was born from this marriage. A niece of Fernando VII, the Infanta Luisa Carlota, married her uncle Francisco de Paula.

[3] At the beginning of the 19th Century, insofar as criminal matter is concerned, the then archaic and uncodified provisions of the *Novísima Recopilación* (1805) were in force in Spain, and as supplementary law, the "Partidas." The Spanish Constitution of 1812 ordered the framing of a Penal Code. The political change of 1814 thwarted momentarily that and other projects, but once the constitutional regime was restored in 1820 the approval of the Penal Code in 1822 was possible. The life of this Code was very short—one year and three months—since the reaction of 1823 destroyed the previous work, the *Novísima Recopilación* coming again into force. This situation, of course, was not satisfactory and after the appointment of several successive Commissions finally the Penal Code of 1848 was presented

As it is known, our Penal Code issues from California. Since in California the sexual relation with which we are dealing in the instant case does not constitute incest either, as we shall explain hereinafter. So that both in the light of our historical law—the Spanish Penal Code in force in Puerto Rico before the change of sovereignty—and in the light of the Californian origin of our present Penal Code, the facts of the instant case do not constitute incest. We state below why that is so and also why the judgment appealed from cannot be sustained.

Bear in mind the provisions of § 275 of our Penal Code in force, which we have copied verbatim previously in this opinion. It is true that the Civil Code in its § 71, 31 L.P.R.A. § 233(2), provides that "collaterals by consanguinity within the fourth degree" cannot contract marriage with each other. Without deciding it now, we may assume, as the Solicitor General suggests, that that prohibition to contract marriage contained in the Civil Code comprises both half-blood and full-blood uncles and nieces and aunts and nephews, but we must bear in mind that that extensive construction is permissible in civil law. However, we are dealing here with a case of criminal law and before transferring an extensive construction from the civil ambit to the criminal ambit it is necessary to examine again the aforecited § 275 of the Penal Code.

Said section, as we said before, issues from the Penal Code of 1902, and appears in said Code with a footnote No. 1, which literally says the following:

to the Courts and approved, and was again declared reformed in 1850. A new Code, that of 1870, was approved under the Constitution of 1869. Since that date to 1928 more than a dozen drafts which sought to replace the Code of 1870 were elaborated. Finally, the project drafted by the Codification Committee in 1926 was sanctioned as Penal Code in 1928. This Code was followed by the Code of 1932, that of 1944, and finally the Spanish Penal Code in force revised in 1963. See 1 F. Puig Peña, *Derecho Penal* 31–72 (1969).

"(1) Incestuous marriages.—Marriages between parents and children, ancestors and descendants of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces, or aunts and nephews, are incestuous and void from the beginning, whether the relationship is legitimate or illegitimate."[4]

So that, as it can be seen, the lawmaker expressly defined the situations which he wished to declare incestuous *for the purpose of the Penal Code*. The text of that footnote which does not appear to be taken from our own Civil Code or from the Spanish Code, *People* v. *González*, 26 P.R.R. 379 (1918), most certainly proceeds from a note which appeared under § 285 of the California Penal Code, 1901 edition—section which is equivalent to § 275 of our Code—and which note in the aforecited edition of the California Code read as follows:

"'Incestuous marriages.—Marriages between parents and children, ancestors and descendants of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces, or aunts and nephews, are incestuous and void from the beginning, whether the relationship is legitimate or illegitimate': Civil Code, § 59."[5]

In adopting in our § 275, § 285 of California, our lawmaker could have omitted the aforecited footnote. In that case probably it would have been necessary to resort to the aforecited § 71 of our Civil Code in order to complete § 275 of the Penal Code. However, as we have set forth, our lawmaker chose to define the incestuous relations in our Penal Code, as it had been done by the California lawmaker upon approving in 1872, § 285 of the Penal Code of California.

■ The aforecited definition of what constitutes an incestuous relation taken by our lawmaker from the note with

---

[4] Revised Statutes and Codes of Puerto Rico 537 (1902).

[5] Section 59 of the Civil Code of California consists of an identical provision. West's Anno. California Code, Civil Code, § 59.

which the lawmaker of California accompanied § 285 of that state and transferred to the footnote of our § 275, provides that the marriages between ancestors and descendants of every degree, between brothers and sisters of the whole as well as the *half* blood, and between uncles and nieces or aunts and nephews are incestuous. This is, it expressly includes and declares as incestuous the relations between brothers and sisters of the whole as well as of *brothers and sisters* of the half blood but, however, it does not include the relations between uncles and nieces and aunts and nephews of the half blood. So that for criminal purposes it declared as incestuous the relations between brothers and sisters of the whole blood as well as of half blood but insofar as uncles and nieces were concerned it did not include them when it was a half-blood relationship.

The situation under our consideration was decided by the Supreme Court of California. *People* v. *Baker*, 442 P.2d 675 (1968), dealt with an individual who had sexual intercourse with the daughter of a sister of his of the half blood, this is, with a niece of the half blood, as in the case at bar. He was charged with rape and incest, for in that case, contrary to the instant case, there was some violence and coercion. It seems that in the opinion of the court the violence was not sufficient to find him guilty of rape, but he was found guilty of incest by the trial court. The Supreme Court of California, making an analysis of § 285 of the Penal Code of that state and of the footnote repeatedly mentioned herein, concluded that the court could not assume that that definition of the incestuous relation provided by the lawmaker himself in the Penal Code constituted a mere error but that it constituted his express will. Consequently it decided that by including in an express manner the relation between brothers and sisters of the half blood within the criminal sanction and in failing to include in the same manner the relation between

uncles and nieces of the half blood, this last situation was excluded from the definition of the incestuous relation. The court reversed the conviction appealed from. In so doing, the court of California, besides using his own reasoning, followed the case of *State* v. *Bartley*, 263 S.W. 95 (1924), which construed in a similar manner equal provisions of Missouri, and reversed a previous case of California, *People* v. *Womack*, 334 P.2d 309 (1959), where the contrary had been decided.

■ The reasoning of the Supreme Court of California as well as ours are in agreement with what we stated in *Rodríguez* v. *Díaz*, 65 P.R.R. 266, 274 (1945), citing a case of Louisiana in the sense that "the mere prohibition of marriage does not create the offense of incest." This must be clear. In *Rodríguez* v. *Díaz, supra*, we stated that we cannot by implication include within a criminal provision other cases which are not comprised therein. That is the very situation of the case at bar. There is no doubt that the state has—within the constitutional limits—the *jus puniendi*, but if it exercises it, it should be done in writing and in an express manner.

Our decision in the instant case and that of the Supreme Court of California in *People* v. *Baker, supra*, are in accordance with the modern international currents. See Ploscowe, *"Report to the Hague: Suggested Revisions of Penal Law Relating to Sex Crimes and Crimes Against the Family,"* in 50 Cornell L. Q. 425, 431–432 (1965).

The young women are not left without protection since, as it is known, when the female is under the age of 14 years, even if she consents, the relation constitutes an aggravated offense of rape. And if she is 14 or more years old and force or violence is used it also constitutes rape. Sections 255 and 258 of the Penal Code, 33 L.P.R.A. §§ 961 and 964, respectively. The aforecited provisions cover both strangers as well as relatives of the whole or of the half blood for they do not make a distinction, except in the case of the husband.

In view of the foregoing, our judgment of May 8, 1969, will be set aside, the judgment appealed from will be reversed, and defendant acquitted.

Mr. Justice Martín, with whom Mr. Justice Ramírez Bages and Mr. Justice Martínez Muñoz concur, dissented in a separate opinion. Mr. Justice Hernández Matos took no part in the decision of this case.

—O—

MR. JUSTICE MARTÍN, with whom MR. JUSTICE RAMÍREZ BAGES and MR. JUSTICE MARTÍNEZ MUÑOZ concur, dissenting.

San Juan, Puerto Rico, October 12, 1972

I take the liberty to dissent. The carnal union between appellant and the daughter of his half-brother is precisely the relation between uncle and niece which constitutes offense under § 275 of the Penal Code of Puerto Rico since they are in the third degree of consanguinity, that is, within the degree of consanguinity in which marriages are declared void by our law. 33 L.P.R.A. § 1115; 31 L.P.R.A. § 233(2).

Said § 275 of our Penal Code provides that:

"Persons being within the degrees of consanguinity within which marriages are declared by law to be void, who intermarry with each other, or who commit fornication or adultery with each other, are punishable by imprisonment in the penitentiary not exceeding ten years."

And, our Civil Code, of Spanish origin, declares certain marriages void, and insofar as pertinent to the instant case, it provides in its § 71, the following:

"§ 233—Impediment to contract [marriage]

"Nor can the following contract marriage with each other:

.    .    .    .    .    .    .    .

"2. Collaterals by consanguinity within the fourth degree."[1] 31 L.P.R.A. § 233(2).

As we said before the defendant and the prosecutrix were uncle and niece—third degree—and no marriage took place but they had sexual relations with each other. The cause which is object of this opinion is only directed against the uncle.

Section 275 of our Penal Code is almost a copy and faithful image of § 285 of the Penal Code of California, which reads thus:

"Persons being within the degrees of consanguinity within which marriages are declared by law to be *incestuous and void,* who intermarry with each other, or who commit fornication or adultery with each other, are punishable by imprisonment in the state prison not exceeding ten years." (Italics ours.)

In California, incestuous and void marriages are defined by § 59 of its Civil Code as follows:

"Incestuous marriages.—Marriages between parents and children, ancestors and descendants of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces, or aunts and nephews, are *incestuous and void* from the beginning, whether the relationship is legitimate or illegitimate." (Italics ours.)

Now then, when the Penal Code of California was adopted in Puerto Rico in 1902, a note which appeared in the *Annotated* Penal Code of said state was copied as a footnote at the foot of our § 275 (but without being an integral part of the text of said section), thing which constitutes by all means a legislative lapsus, which note is a textual copy of the provision of the Civil Code of California concerning void and incestuous marriages which we have previously cited. Said note was not part of the Penal Code of California but it was

---

[1] On petition of an interested party, the Superior Court, for just cause, may waive the fourth degree of consanguinity—first cousins. 31 L.P.R.A. § 234.

a mere reference, in the *annotated* edition of said Penal Code, to the definition of what constituted an incestuous marriage in the aforementioned state according to the Civil Code.

The aforecited provisions comprised in the Civil Code of Puerto Rico and of California on the nullity of marriages between persons within certain degrees of consanguinity are substantially similar. The most important difference lies in the fact that in our Civil Code the nullity extends to the fourth degree, while in California it extends to the third degree. Since the footnote incorporated into our Penal Code prohibits the marriage between uncles and nieces and aunts and nephews, and assuming that its purpose was to restrict the criminal punishment to relations between relatives to the third degree, the same is applicable to the instant case, the relations between first cousins remaining outside its ambit. Both provisions have in common the prohibition of marriage between uncles and nieces and aunts and nephews.

The gist of the question to be decided is whether in mentioning uncles and nieces, both in the aforementioned footnote, and in our Civil Code, is it fit to distinguish between uncles and nieces of the whole blood and of the half blood.

We think that as it was said in *State* v. *Reedy*, 44 Kan. 190, 24 P. 66, and held in *People* v. *Womack*, 334 P.2d 309, the language of the statute when it refers to uncles and nieces should be interpreted according to its common meaning[2] and that common meaning evidently includes the relation in the case at bar, under the text of the aforementioned footnote of our Penal Code as well as of § 71 of our Civil Code.

None of said provisions makes any distinction whatsoever between the whole-blood or half-blood relationship between

---

[2] Section 559 of our Penal Code, 33 L.P.R.A. § 11, definition 14, provides that the words and phrases must be construed according to the context and the *approved* usage of the language. (Italics ours.)

uncles and nieces.[3] *Ubix lex non distinguit, nec nos distinguiere debemus.*

The case of *People* v. *Baker*, 442 P.2d 675 (1968), cited as persuasive background by the majority to sustain that the language of the note does not include the relation of the instant case, in my opinion, should not have been followed.[4] The conclusion reached in that case represents the minority opinion in the United States on this matter and it was thus acknowledged there by the court itself. See also, *Sexual Inter-*

---

[3] In our code of laws the degrees of relationship are established in the Civil Code in its provisions related to intestate succession. 31 L.P.R.A. §§ 2601 to 2609.

.In explaining the articles of the Spanish Code concerning the relationship equivalent to ours, insofar as pertinent, Manresa says that the relationship is the bond or relation which ties several persons among themselves, and adds that when it is established by the community of origin between the persons whom it reaches by having the same blood running in their veins, by proceeding from a common trunk or progenitor; it is called "natural" or of consanguinity; it may be legitimate or illegitimate and they may be classified, one and the other, in relationship of the whole blood or of the half blood. Manresa, *Código Civil Español* 94–95, §§ 915–919 (1955 ed.).

. . For the purpose of computation of the degrees of relationship Manresa comments that "in the collateral line there are always two branches, and the generations are to be counted in both, ascending in one from the predecessor to the common trunk, and descending in the other from that trunk to the person who aspires to succeed." "Thus," Manresa says, "brothers and sisters proceed from the same father *or* mother; the father *or* the mother is, then, the common trunk, from a brother to his father there is one generation or degree; brothers and sisters are then in a second degree of relationship . . . . Between uncles and nieces and aunts and nephews there are three degrees." (Manresa, *supra* at pp. 96, 97.)

The computation as to the degrees of relationship governs without exception for all matters as specifically provided by the Civil Code. 31 L.P.R.A. § 2605. This means of course, that for the purpose of establishing the relationship between the persons whose marriages are prohibited by law, the method of computation of degrees contained in the section of the Civil Code, which we have explained, must be applied.

[4] The decisions of the Supreme Court of the State of California rendered subsequently to the date when we adopted from said state our Penal Code only have persuasive force in this jurisdiction. See, *People* v. *Pacheco*, 83 P.R.R. 505 (1961); *Corretjer* v. *District Court*, 72 P.R.R. 704 (1951).

course between Persons Related by Half Blood as Incest, note, 72 A.L.R.2d 706. Though as it is stated in the *Baker* case, *supra*, the relations comprised within the offense of incest shall depend upon the particular statutes of the state, even within the decisions of the states where the offense of incest is defined in a similar manner to the civil statute of California and, therefore, similar to the footnote of our Penal Code, the decision of *Baker*, *supra*, is a minority decision. In the cases of *State* v. *Reedy*, *supra; State* v. *Guiton*, 51 La. Ann. 155, 24 So. 784; *State* v. *Harris*, 149 N.C. 513, 62 S.E. 1090, where the statute distinguished between brothers and sisters of the whole blood and brothers and sisters of the half blood but not between uncles and nieces or aunts and nephews, as our footnote does, it was decided that the sexual relation between an uncle and the daughter of his half-brother was contained in the definition of incest.

The case of *Rodríguez* v. *Díaz*, 65 P.R.R. 266, 274 (1945), upon which the majority of this Court rests to render the opinion which is object of this dissent in which the relation between first cousins is involved, as well as the citation which is made in that case of the wise doctrine adopted in the case of *State* v. *Couvillion*, 42 So. 431 (La. 1906), has our approval. But the *Couvillion* case is distinguishable from the case at bar. That case dealt with the application of a criminal statute of 1884 which punished incest between persons within certain degrees of consanguinity set forth in the Civil Code then in force in Louisiana, but which did not include first cousins. When the Civil Code of said state was amended in 1900 the first cousins were included among the relations prohibited and the aforecited *Couvillion* case, whose facts took place after the amendment of the Civil Code, decided that the criminal provision of 1884 never contemplated to include first cousins. The restrictive construction adopted in said case was imperative and we applaud it. The principle of restrictive construction followed in the *Rodríguez* v. *Díaz* and *Couvillion*

cases, *supra*, is not applicable to the case at bar for the reasons already explained in the course of this dissent.

The prohibition against the incestuous relationship, ever since Aristotle, was considered as an obstacle against the lewd concupiscence, which would have turned the pure family love into an opportunity of practical and frantic licentiousness if such prohibition had not existed. See *Diccionario de Derecho Privado* 1114, Editorial Lalor, 1954. The duty to modify legislation which comprises measures of public order, as the one involved herein, which answers to the moral tradition of the Puerto Rican family institution, is incumbent upon the Legislature and not upon this Court. The judgment appealed from should have been affirmed.