MIGUELINA RODRÍGUEZ ESPINOSA, demandante y apelante, *v.* RAMONA DÍAZ, demandada y apelada.

Núm. 9052.—*Sometido:* Abril 6, 1945. *Resuelto:* Julio 12, 1945.

*Géigel & Silva,* abogados de la apelante; *Fernando Ruiz Suria,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El padre legítimo de la apelante contrajo matrimonio con su prima hermana la apelada, el 26 de julio de 1913, sin haber obtenido previamente la dispensa de la corte de distrito y sin que el padre de la apelada concediese la autorización necesaria para que ella pudiese contraer matrimonio, toda vez que para aquella fecha sólo contaba veinte años de edad. Los contrayentes continuaron viviendo juntos después de haber llegado la apelada a la mayor edad, sin haberse reclamado en juicio contra la validez del matrimonio, el cual fué luego disuelto por la muerte del padre de la apelante, quien dejó bienes y como únicos descendientes a la apelante y a un hermano de ésta de doble vínculo.

La corte inferior, basándose en estos hechos, dictó sentencia declarando sin lugar la demanda, fundándose en que

el matrimonio en cuestión no era nulo sino meramente anulable y que no podía ser anulado después de la muerte de uno de los contrayentes.

En el artículo sobre el matrimonio publicado en la Enciclopedia Jurídica Española invocada por la corte inferior, se dice:

"Se limitaron nuestros legisladores a enumerar los casos de nulidad del matrimonio, sin distinguir entre los que, por ser propia y verdaderamente nulos, se reputan inexistentes, de aquéllos que son sólo anulables, diferencia sustancial por los efectos que unos y otros producen. De suerte que a la doctrina y a la jurisprudencia incumbe la difícil misión de determinarla." T. 21, pág. 858.

Con efecto, ya este Tribunal, en el caso de *Cintrón* v. *Román,* 36 D.P.R. 484, resolvió que el matrimonio de una mujer divorciada contraído durante los 301 días siguientes a la sentencia de divorcio, no obstante la declaración de incapacidad contenida en el artículo 70, inciso 6 del Código Civil,[1] no es nulo *ab initio,* y que no habiendo tenido la mujer prole hasta dos años después de contraído el matrimonio, la razón legal para anularlo, es decir, la confusión que podía existir con respecto a si la prole era del primero o del segundo esposo, había cesado, y por consiguiente el matrimonio que en su origen era sólo anulable, había quedado convalidado desde que expiraron los 301 días siguientes a la sentencia sin el advenimiento de hijos. Se distinguió este caso del de *Cabassa* v. *Nadal,* 23 D.P.R. 744, donde el matrimonio fué anulado. En el de Cabassa, la acción de nulidad fué presentada por la esposa en vida de las partes, dentro de los 301 días siguientes a la fecha de la sentencia de divorcio. Por último, en el caso de *Just* v. *Just et al.,* 32 D.P.R. 248, donde la demanda de nulidad estaba basada en que el esposo

[1] El inciso 6 del artículo 70 del Código Civil (Ed. 1930) dice así:

"6. La viuda durante los trescientos un días siguientes a la muerte de su marido, o antes de su alumbramiento si hubiere quedado en cinta, y la mujer cuyo matrimonio hubiere sido declarado nulo o disuelto en los mismos casos y términos, a contar desde la fecha de la nulidad y disolución."

no sólo era impotente sino de insuficiencia mental, se dijo por este Tribunal a la pág. 251:

"Nos inclinamos a resolver, sin otra consideración, que un contrato de matrimonio que es meramente anulable puede continuar o ser ratificado por los actos de las partes con tal que sean *sui juris*, como se indica en nuestra opinión original. La amplia facultad del artículo 179, al incluir al fiscal, tiende a mostrar que la nulidad que ha de solicitarse era de carácter público. Cuando dos personas mayores de edad y de sano juicio no han contraído ningún matrimonio anterior, y nada más ha ocurido que anulase el matrimonio *ab initio,* la continuación del matrimonio, de ser anulable, es una cuestión entre las partes y como los demás contratos, está sujeta a confirmación, ratificación o algo semejante.

"Volviendo a examinar los artículos 130 y siguientes se verá que la incapacidad a que los mismos se refieren a veces hará nulo un matrimonio ab initio y otras meramente anulable. Por preceptos específicos de los mismos las partes en ciertos casos pueden ratificar el matrimonio o renunciar sus derechos. Un menor que contrae matrimonio sin el consentimiento de sus padres puede convalidar el matrimonio al llegar a su mayor edad. El pupilo que contrae matrimonio con su tutor antes de que se aprueben definitivamente las cuentas de la tutela, etc., puede asimismo ratificar el matrimonio al llegar a su mayor edad. En el caso de *Ledesma* v. *Agraít,* 19 D.P.R. 566, resolvimos asimismo que las disposiciones del artículo 1362 permitían la ratificación de contratos en los que se observaban las formalidades externas del artículo 1228. Pero la consideración principal por virtud de la cual resolvemos este caso es que el demandante, apelado, no ha demostrado un interés tal que le dé derecho a una acción. En cuanto a esta parte de la discusión puede suponerse que al artículo 179 se refiere a cualquiera clase de incapacidad."

Incumbe a nosotros ahora determinar si el matrimonio contraído por una mujer de veinte años de edad sin la licencia de su padre es nulo ab initio, y en el caso de ser meramente anulable, si quedó convalidado por el hecho de que después de llegar ella a su mayoridad, continuó viviendo con su esposo sin haberse atacado la validez del matrimonio y si es nulo ab initio, o solamente anulable el matrimonio contraído sin dispensa entre primos hermanos.

## I

█ El haberse contraído el matrimonio por la apelada sin licencia de su padre cuando sólo contaba veinte años de edad, es claramente anulable, como por vía de *dictum,* se dijo en *Just* v. *Just,* supra. La alegada incapacidad no es de tal naturaleza que sea contraria a la moral, y una vez cumplida la mayoridad y continuando la menor viviendo con su esposo sin atacar la validez del matrimonio, no hay razón de orden público que impida su confirmación. Artículos 1262, 1263 y 1265 del Código Civil.

## II

█ Si pudiésemos despojar al matrimonio de su condición de institución civil,([2]) y considerarlo en todo caso como un mero contrato, muy fácil tarea sería la de resolver qué matrimonios son inexistentes, y cuáles son los anulables. Bastaría en cada caso determinar si habían existido los requisitos necesarios para la validez del matrimonio([3]) y existiendo esos requisitos no sería inexistente. No habría duda desde el punto de vista del contrato, que el matrimonio celebrado entre primos hermanos sin haberse obtenido la correspondiente dispensa, no sería inexistente, pues existiría capacidad para contratar, consentimiento de los contrayentes y autorización y celebración mediante las formas y solemnidades prescritas por la ley. Pero el matrimonio no es

---

([2])El artículo 68 del Código Civil (Ed. 1930) dice como sigue:

"El matrimonio es una institución civil que procede de un contrato civil en virtud del cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, y a cumplir el uno para con el otro los deberes que la ley les impone. Será válido solamente cuando se celebre y solemnice con arreglo a las prescripciones de aquélla, y sólo podrá disolverse antes de la muerte de cualquiera de los dos cónyuges, en los casos expresamente previstos en este código."

([3])El artículo 69 del Código Civil (Ed. 1930) dice como sigue:

"Los requisitos necesarios para contraer matrimonio son:

"1. Capacidad legal de los contratantes.

"2. Consentimiento de las partes contratantes.

"3. Autorización y celebración de un contrato matrimonial mediante las formas y solemnidades prescritas por la ley."

un mero contrato. Es una institución civil que por su enorme importancia en la sociedad civilizada, el Estado tiene gran interés en regularlo, y ejercitando esa función, ha impuesto ciertos impedimentos para contraerlo, entre los cuales se encuentran la prohibición a los colaterales por consanguinidad hasta el cuarto grado. Sin embargo, en cuanto a los colaterales por consanguidad en cuarto grado, en la fecha en que se contrajo el matrimonio de este caso, el artículo 133 del Código Civil (Comp. 1911) disponía que los tribunales de distrito con justa causa podían dispensar, a instancia de parte, el cuarto grado de consanguinidad. Posteriormente el artículo 133 (que es el 72 de la edición de 1930) ha sido tan liberalizado que, en ciertos casos, puede contraerse el matrimonio sin necesidad de dispensa.[4]

Cuando la Asamblea Legislativa, previa la correspondiente dispensa, permite el matrimonio entre primos hermanos que tienen capacidad legal para contraer matrimonio, que han prestado consentimiento y llenado las formas y solemnidades prescritas por la ley, cuando ha ido aún más lejos eliminando la necesidad de la dispensa cuando viviendo en concubinato y como resultado de esa unión existen hijos, o aun sin existir hijos, cuando alguno de ellos se hallare en inminente peligro de muerte, ¿puede decirse propiamente que nuestra legislación considera el matrimonio sin dispensa entre primos hermanos tan contraria a la moral y al orden público[5] que los tribunales deberán considerarlo inexistente

---

[4] Véanse el artículo 72, ed. 1930, según fué enmendado por la Ley núm. 42 de 22 de abril de 1942 ((1) pág. 453), y especialmente la enmienda a dicho artículo por la Ley núm. 15 de 7 de abril de 1945 (pág. 43). A virtud de esta última Ley puede prescindirse de la dispensa (a) cuando los primos hermanos hayan vivido en concubinato y como resultado de esa unión existan hijos, y (b) cuando viviendo en concubinato, aunque no existan hijos, uno de ellos estuviere en inminente peligro de muerte.

[5] Se alegan razones de orden biológico para desalentar el matrimonio entre primos hermanos, pero que dichos matrimonios no son contrarios a la moral ni al orden público lo demuestra el hecho de que son permitidos, sin necesidad de dispensa, en las siguientes jurisdicciones: Argentina, Ley Sobre Matrimonio Civil, Art. 9; Cuba, Código Civil, Art. 84; España, Código Civil, Art. 84;

290

y no meramente anulable? Por el contrario, cuestiones de orden público, tales como la legitimidad y derechos hereditarios de los hijos,(6) quienes no son responsables de la negligencia de sus padres al no obtener la dispensa, requieren que el matrimonio no se anule, sino por razones muy poderosas. Es verdad que en el presente caso no hubo prole, pero si resolviésemos que este matrimonio es nulo ab initio, la misma regla tendríamos que aplicar cuando se trate de un matrimonio con prole, y el resultado de esa decisión sería verdaderamente desastroso. Razones de este orden hacen que en los países civilizados no se vea con simpatía la drástica doctrina de matrimonios nulos ab initio. *In re Guthery's Estate,* (Mo., 1930), 226 S. W. 626, 627.

Refiriéndose a la necesidad de dispensa para los primos hermanos exigida por el Código Español, se dice en el citado artículo de la Enciclopedia Jurídica Española, pág. 847 a 848: "No está muy justificada la extensión de esta condición negativa hasta los colaterales del cuarto grado." Al mismo efecto León Bonel y Sánchez, en su obra Código Civil Español, Comentado y Concordado, T. 1, pág. 175, dice

Perú, Código Civil, Art. 83; Código Civil Alemán, 1907, Art. 1310; California, Código Civil, Art. 59; Connecticut, Gen. Stat. (ed. 1930) Sec. 5148; Delaware, Rev. Stat. (ed. 1915) Sec. 2992; Hawaii, Rev. Law (ed. 1945) Chap. 301, Sec. 12351; Idaho, Civil Code (ed. 1908) Sec. 2615; Maine, Rev. Stat. (ed. 1916) Title V, Chap. 64, Sec. 1; Massachusetts, Gen. Laws (ed. 1932) Tifle III, Chap. 207, Sec. 1, 2; Mississippi Code, 1942, Chap. 4, Sec. 458; Nebraska, Rev. Stat. (ed. 1913) Sec. 8769 y North Carolina, Revisal of 1905, Sec. 2083.

(6)Es sensible que nuestro Código Civil no adoptara el artículo 69 del Español que dice:

"El matrimonio contraído de buena fe produce efectos civiles, aunque sea declarado nulo.

"Si ha intervenido buena fe de parte de uno solo de los cónyuges, surte únicamente efectos civiles respecto de él y de los hijos.

"La buena fe se presume, si no consta lo contrario.

"Si hubiere intervenido mala fe por parte de ambos cónyuges, el matrimonio sólo surtirá efectos civiles respecto de los hijos."

El Código Civil de Luisiana, en su artículo 118, persiguiendo el mismo propósito, prescribe:

"Si solamente una de las partes actuó de buena fe, el matrimonio produce sus efectos civiles solamente a favor de él o de ella y a favor de los hijos nacidos del matrimonio."

que los impedimentos a los parientes por consanguinidad deben limitarse a escasísimos casos, y sólo deben prevalecer por circunstancias muy especiales.

En Luisiana, donde los primos hermanos no pueden contraer matrimonio entre sí—artículo 95 del Código Civil—se ha resuelto que el contraído por ellos es nulo ab initio. *Chandler* v. *Hayden,* (La., 1925), 105 So. 80. Ese caso es fácilmente distinguible del que nos ocupa, pues en Luisiana no existe, como en Puerto Rico, el precepto legal que permite a los primos hermanos contraer matrimonio con dispensa, y en ciertos casos sin ella. Allí la Legislatura ha expresado claramente su intención de que los matrimonios entre colaterales hasta el cuarto grado de consanguinidad no surtan efecto legal alguno. Para hacer más patente su intención, expresamente dispuso en el citado artículo 95 que el matrimonio contraído en otro Estado por ciudadanos de Luisiana, sin antes haber adquirido un domicilio fuera de Luisiana, en violación de las disposiciones del citado artículo, no tendrá efecto legal alguno en este Estado.

### III

■ Arguye la apelante que como el artículo 275 del Código Penal prescribe que las personas que, hallándose dentro de los grados de consanguinidad en que los matrimonios son declarados nulos por la ley, se casaren o cometieren concúbito o adulterio entre sí, incurren en pena de presidio por un término máximo de diez años; y que como el Código Civil prohibe el matrimonio entre primos hermanos, ese matrimonio, de acuerdo con la jurisprudencia americana, se considera incestuoso y absolutamente nulo. Véanse Monografías en L.R.A. 1916-A, págs. 723, 727 y 76 A.L.R. 769.

Si considerásemos aisladamente el artículo 275 del Código Penal, sin tener en cuenta sus antecedentes y sin considerar lo absurdo de una interpretación sosteniendo que matrimonios que en ciertos casos pueden legalmente ser con-

traídos sin dispensa se convierten en incestuosos por no haberse obtenido la dispensa del parentesco, tendríamos que convenir con la apelante en que el matrimonio de este caso es nulo ab initio. Pero el artículo 275 del Código Penal fué tomado del artículo 287 del Código Penal de California; y como en California, de acuerdo con el artículo 59 del Código Civil, el matrimonio entre primos hermanos puede contraese libremente y sin necesidad de dispensa, el contraer tal matrimonio no constituye allí delito. Pero, como hemos visto, el artículo 71 del Código Civil de Puerto Rico, de origen exclusivamente español, prohibe el matrimonio entre primos hermanos, a menos que de conformidad con el artículo 72 del mismo Código, se obtenga la dispensa. El concepto de incestuoso conlleva la acepción de inmoral y de contrario al orden público y sería una aberración sostener que un matrimonio que la misma ley conceptúa como inmoral y contrario al orden público, pudiese ser sancionado y permitirse su existencia con simplemente obtener una dispensa de la corte de distrito correspondiente, o aun sin obtenerla por el hecho de que existieran hijos del matrimonio. En otras palabras, la dispensa de la corte de distrito, o la supervivencia de hijos, o el hallarse en inminente peligro de muerte una de las partes, tendría el efecto de convertir en inocente una relación que de interpretarse el artículo 275 del Código Penal en la forma que pretende la apelánte, sería un delito *felony* castigable con pena máxima de diez años de presidio. No pudo ser la intención del legislador, al adoptar el artículo 285 del Código Penal de California, que el matrimonio contraído entre primos hermanos, aun sin licencia, pudiese considerarse como constitutivo del delito de incesto.

Una situación semejante tuvo lugar en el Estado de Luisiana. Originalmente, el artículo 95 del Código Civil permitía a los primos hermanos contraer matrimonio sin necesidad de dispensa. Existía una Ley del año 1884 en dicho Estado dispositiva de que los que a sabiendas contrajesen

matrimonio o cohabitasen sin ser casados siendo parientes comprendidos en los grados de consanguinidad dentro de los cuales el matrimonio estaba prohibido por los artículos 94 y 95 del Código Civil Revisado de Luisiana, incurrían en el delito de incesto. En el año 1900 se enmendó el artículo 95 del Código Civil, y de acuerdo con la enmienda quedó prohibido el matrimonio entre los primos hermanos. Se imputó al acusado haber contraído matrimonio con una prima hermana y se alegaba que ese matrimonio infringía la Ley de 1884, toda vez que a virtud de la enmienda de que fué objeto el artículo 95 del Código Civil en el año 1900, el matrimonio entre primos hermanos era uno de los prohibidos por la Ley. Se dijo que la mera prohibición del matrimonio no crea el delito de incesto y que como los estatutos penales deben ser estrictamente interpretados y no pueden extenderse por implicación, para abarcar otros casos que no estén comprendidos dentro de sus claros términos, se resolvió que la acusación no imputaba el delito de incesto. *State* v. *Couvillion,* (1906 La.) 42 So. 431.

No constituyendo el matrimonio así contraído el delito de incesto y siendo por el contrario meramente anulable, no puede solicitarse la declaración de su nulidad después de la muerte de uno de los contrayentes. *Cintrón* v. *Román,* 36 D.P.R. 484, 491; *In re Guthery's Estate,* supra, pág. 627.

*Por los motivos expuestos procede la confirmación de la sentencia apelada.*([7])

---

([7])No obstante la importancia de las cuestiones envueltas en este caso, no hemos tenido el beneficio del alegato de la apelada, a pesar de haberse concedido prórroga a su abogado para presentarlo.