El Pueblo de Puerto Rico, demandante y apelado, *v.* Jorge Matías Báez, acusado y apelante.

*Número:* CR-66-281    *Resuelto:* 12 de octubre de 1972

*Santos P. Amadeo, Máximo Ortiz Ortiz* y *Domingo Ríos Román,* abogados del apelante; *Gilberto Gierbolini, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

—En Moción de Reconsideración—

PER CURIAM: El apelante fue convicto de incesto y sentenciado a cumplir de uno a tres años de presidio. Tuvo relaciones sexuales con una sobrina suya por parte de madre. A la fecha de los hechos él tenía 24 años y cuatro meses de edad y ella 17 años y cuatro meses.

Los hechos ocurrieron en la siguiente forma, según la declaración en el juicio de la joven: Ella fue a casa del apelante a lavarle la ropa. Cuando terminó de lavarla subió a la casa (aparentemente la lavó en el patio) y fue a la habitación del apelante. Este se encontraba sentado en su

cama leyendo una revista. La joven se le sentó al lado y él la invitó a tener relaciones sexuales con él. Ella contestó que no se atrevía. El apelante comenzó a acariciarla, a lo cual ella no hizo objeción, y finalmente accedió a tener relaciones sexuales con él.

Mediante Sentencia de 8 de mayo de 1969 confirmamos la sentencia apelada. Vista una moción de reconsideración presentada por el apelante, instruimos al Procurador General que discutiese los siguientes dos puntos: (1) Si el Art. 275 del Código Penal, 33 L.P.R.A. sec. 1115, es inconstitucionalmente indefinido o impreciso, y (2) si en esta jurisdicción la relación entre tíos y sobrinos de un solo vínculo crea la relación incestuosa penada por el Art. 275 antes citado. En esa fecha, 10 de febrero de 1970, pusimos al apelante bajo fianza en apelación.

Este caso nos hace examinar cuál es la situación en cuanto a si una relación entre tío y sobrina de un solo vínculo cae dentro de lo preceptuado por el Art. 275 del Código Penal, 33 L.P.R.A. sec. 1115. Dicho artículo, el cual procede del Código Penal de 1902, dispone lo siguiente:

"Las personas que hallándose dentro de los grados de consanguinidad en que los matrimonios son declarados nulos por la ley, se casaren o cometieren concúbito o adulterio entre sí, incurrirán en pena de presidio por un término máximo de diez años."

Si los jóvenes aquí concernidos, hubiesen sostenido su relación amorosa en Puerto Rico en alguna fecha antes del primero de julio de 1902, fecha en que comenzó a regir el Código Penal de ese año, dicha relación no hubiese constituido delito público. Regía en Puerto Rico antes de la aludida fecha el Código Penal español reformado del año 1870, hecho extensivo a Cuba y Puerto Rico por Real decreto de 23 de mayo de 1879, a propuesta del Ministro de Ultramar Don Salvador de Abacete, de acuerdo con el Consejo de Ministros y en virtud de la autorización otorgada al Gobierno por el Art. 89 de la Constitución española de 1876. Dicho Código Penal español,

vigente entonces en este país, no hacía delito público las relaciones amorosas o sexuales entre tíos y sobrinas o entre tías y sobrinos aunque, antes como ahora y allá como acá, el Código Civil prohibía y prohíbe el matrimonio entre ellos. Véanse Art. 459 del Código Penal de 1879 para Cuba y Puerto Rico, Art. 84 del Código Civil español, Art. 71 del Código Civil de Puerto Rico (31 L.P.R.A. sec. 233.) (¹)

Más aún, si los hechos hubiesen tenido lugar *en el presente* en España, tampoco hubiesen constituido delito público pues aunque el Código Civil español, igual que el nuestro, como dijimos, prohíbe el matrimonio entre tío y sobrina, la relación amorosa entre ellos no constituye delito. (²) En España constituye incesto sólo la relación sexual de varón con su *hermana o descendiente.* Véanse el Art. 435 del vigente Código Penal español revisado en 1963; Puig Peña, Derecho Penal, Tomo 4, 6ta. ed. (1969), p 78; Quintano Ripolles, *Comentarios al Código Penal,* 2da. ed. 1966), pág. 799. (³)

(¹) Del Código Penal español reformado de 1870 extendido a Puerto Rico en 1879, aparece su texto completo en el tomo 122 de la *Colección Legislativa de España,* imprenta del Ministerio de Gracia y Justicia, Madrid (1880), págs. 936 y ss. El Real decreto que lo hizo extensivo a Puerto Rico aparece en la página 927 de dicho tomo y allí comienza el Informe de la Comisión remitiendo el proyecto de Código Penal para Cuba y Puerto Rico. También hay un texto publicado con el nombre de Código Penal de 1879 para las Islas de Cuba y Puerto Rico publicado en La Habana en 1879.

(²) No era desconocido en el siglo XIX en España, ni en el resto de Europa, el matrimonio entre tíos y sobrinas y sobrinos y tías. El Rey de España Fernando VII casó en segundas nupcias con su sobrina María Isabel y más luego casó en cuartas nupcias con su sobrina María Cristina de Borbón. De este enlace nació la que luego fue Reina de España, Isabel II. Una sobrina de Fernando VII, la Infanta Luisa Carlota, casó con su tío Francisco de Paula.

(³) A principios del siglo XIX regían en España en materia penal las ya arcaicas y no codificadas disposiciones de la Novísima Recopilación (1805) y, como derecho supletorio, las Partidas. La Constitución española de 1812 ordenó la formación de un Código Penal. El cambio político de 1814 frustró de momento ése y otros proyectos, pero restablecido el régimen constitucional en 1820 fue posible aprobar el Código Penal de 1822. La vida de este Código fue brevísima—un año y tres meses—pues la reacción de 1823 derogó la labor anterior, volviendo a quedar otra vez

Como se sabe, nuestro Código Penal procede de California. Pues en California la relación amorosa de la cual tratamos en este caso tampoco constituye incesto, según explicamos más adelante. De manera que tanto a la luz de nuestro derecho histórico—el Código Penal español vigente en Puerto Rico antes del cambio de soberanía—como a la luz de los orígenes californianos de nuestro actual Código Penal, los hechos de este caso no constituyen incesto. Exponemos a continuación por qué eso es así y también por qué la sentencia apelada no puede sostenerse.

Recuérdese lo que dispone el Art. 275 de nuestro vigente Código Penal, el cual hemos citado *verbatim* anteriormente en esta opinión. Es cierto que el Código Civil en su Art. 71, 31 L.P.R.A. sec. 233(2), dispone que no podrán contraer matrimonios entre sí "los colaterales por consanguinidad hasta el cuarto grado." Sin resolverlo ahora, podemos asumir, como propone el Procurador General, que esa prohibición de contraer matrimonio contenida en el Código Civil comprende tanto a tíos y sobrinos de doble vínculo como a los de un solo vínculo, pero hay que tener presente que esa interpretación extensiva es permisible en el derecho civil. Sin embargo, aquí se trata de un caso de derecho penal y antes de trasladar una interpretación extensiva de aquel ámbito al ámbito penal es necesario examinar de nuevo el citado Art. 275 del Código Penal.

---

en vigor la Novísima Recopilación. Esta situación, desde luego, no fue satisfactoria y tras el nombramiento de varias Comisiones sucesivas finalmente se presenta a las Cortes y se aprueba el Código Penal de 1848, el cual vuelve a decretarse reformado en 1850. Bajo la Constitución de 1869 se aprueba un nuevo Código, el de 1870. Desde esa fecha al 1928 se elaboraron más de una docena de proyectos que intentaron reemplazar al Código de 1870. Finalmente, el proyecto redactado por la Comisión de Codificación en 1926 fue sancionado como Código Penal en el 1928. Suceden a éste el Código de 1932, el de 1944 y finalmente el Código Penal español vigente revisado en 1963. Véase F. Puig Peña, *Derecho Penal*, Tomo 1 (1969), págs. 31–72.

Dicho artículo, como hemos dicho, procede del Código Penal de 1902, y aparece en dicho Código con un escolio Núm. 1, el cual dice literalmente como sigue:

"(1) Matrimonios incestuosos—los matrimonios entre padres e hijos, ascendientes y descendientes en todos los grados, entre hermanos de padre y madre y medio hermanos, y entre tíos y sobrinas o tías y sobrinos, son incestuosos y nulos desde su origen, ya fuere legítimo o ilegítimo el parentesco." (⁴)

De manera que, como puede verse, el legislador definió expresamente las situaciones que quiso declarar incestuosas *a los fines del Código Penal.* El texto de ese escolio, que no parece que fue tomado de nuestro Código Civil ni del de España, *Pueblo* v. *González,* 26 D.P.R. 424, 425 (1918), casi seguramente procede de una anotación que aparecía bajo el Art. 285 del Código Penal de California, edición del 1901— artículo que corresponde al 275 de nuestro Código—y cuya anotación en la citada edición del Código de California leía como sigue:

"Incestuous marriages.—Marriages between parents and children, ancestors and descendants of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces, or aunts and nephews, are incestuous and void from the beginning, whether the relationship is legitimate or illegitimate: Civ. Code, sec. 59." (⁵)

Nuestro legislador pudo haber omitido el citado escolio al adoptar en nuestro Art. 275 el 285 de California. En ese caso probablemente hubiese sido necesario recurrir al antes citado Art. 71 de nuestro Código Civil para completar el Art. 275 del Código Penal. Sin embargo, como hemos señalado, nuestro legislador optó por definir en nuestro Código Penal las relaciones incestuosas, conforme lo había hecho el legislador de

---

(⁴) *Estatutos Revisados y Códigos de Puerto Rico* (1902), pág. 587.

(⁵) De una disposición idéntica consiste la Sec. 59 del Código Civil de California. *West's Anno. California Code, Civil Code,* sec. 59.

California al aprobar en el 1872 el Art. 285 del Código Penal californiano.

■ La citada definición de lo que constituye una relación incestuosa tomada por nuestro legislador de la nota que acompañó el legislador de California al Art. 285 de aquel estado y trasladada al escolio de nuestro Art. 275, dispone que son incestuosos los matrimonios entre ascendientes y descendientes en todos los grados, entre hermanos de padre y madre *y medio hermanos*, y entre tíos y sobrinas o tías y sobrinos. Esto es, incluye y declara en forma expresa incestuosas las relaciones entre hermanos de doble vínculo y *hermanos* de un solo vínculo, pero sin embargo, no incluye las relaciones entre tíos y sobrinas y tías y sobrinos de un solo vínculo. De manera que declaró incestuosas a los fines penales las relaciones entre hermanos de doble vínculo o de un vínculo pero en cuanto a tíos y sobrinas no las incluyó cuando el parentesco es de un solo vínculo.

La situación que nos ocupa fue resuelta por el Tribunal Supremo de California. En *People* v. *Baker*, 442 P.2d 675 (1968), se trataba de un individuo que yació con la hija de un hermano suyo de un solo vínculo, esto es, con una sobrina de un solo vínculo, como en el caso de autos. Se le acusó de violación y de incesto, pues en aquel caso, contrario a éste, hubo alguna violencia y coacción. Parece que a juicio del Tribunal la violencia no fue suficiente para hallarlo convicto de violación, pero fue convicto de incesto por el tribunal de instancia. El Tribunal Supremo de California, haciendo un análisis del Art. 285 del Código Penal de aquel estado y del escolio ya tantas veces mencionado, llegó a la conclusión de que el Tribunal no podía presumir que esa definición de la relación incestuosa dispuesta por el propio legislador en el Código Penal constituía un mero error sino que constituía su voluntad expresa. En consecuencia resolvió que al incluirse en forma expresa dentro de la sanción penal la relación entre hermanos de un solo vínculo y al no incluirse en igual forma

la relación entre tíos y sobrinas de un solo vínculo, esta última situación había quedado fuera de la definición de relación incestuosa. El Tribunal revocó la convicción apelada. Al así hacerlo el Tribunal de California, además de por razonamiento propio, siguió el caso de *State* v. *Bartley*, 263 S.W. 95 (1924) que interpretó en igual forma disposiciones iguales de Missouri, y revocó un caso anterior de California, *People* v. *Womack*, 334 P.2d 309 (1959), en el cual se había resuelto lo contrario.

El razonamiento del Tribunal Supremo de California y el nuestro están acordes con lo que expresamos en *Rodríguez* v. *Díaz*, 65 D.P.R. 285, 293 (1945), citando un caso de Louisiana, en el sentido de que "la mera prohibición del matrimonio no crea el delito de incesto." Esto debe ser claro. Señalamos en *Rodríguez* v. *Díaz*, supra, que no podemos por implicación abarcar dentro de una disposición penal otros casos que no están comprendidos en ella. Esa misma es la situación del caso de autos. No hay duda de que el Estado tiene—dentro de los límites constitucionales—el *ius puniendi*, pero si lo ejerce debe hacerlo por escrito y en forma expresa.

Nuestra decisión en este caso y la del Tribunal Supremo de California en *People* v. *Baker*, supra, están de acuerdo con las corrientes internacionales modernas. V. Ploscowe, *"Report to the Hague: Suggested Revisions of Penal Law Relating to Sex Crimes and Crimes Against the Family,"* en 50 Cornell L. Q. 425, 431–432 (1965).

No quedan sin protección las jóvenes pues, como se sabe, cuando la mujer es menor de 14 años, aunque consienta, la relación constituye el delito grave de violación. Y si tiene 14 años o más y media fuerza o violencia también lo constituye. Arts. 255 y 258 del Código Penal, 33 L.P.R.A. secs. 961 y 964, respectivamente. Las citadas disposiciones cubren tanto a extraños como a parientes de doble o de un solo vínculo pues no distinguen, salvo en el caso del marido.

En vista de lo anterior, *se dejará sin efecto nuestra sentencia de 8 de mayo de 1969, se revocará la sentencia apelada y se absolverá al acusado.*

El Juez Asociado, Señor Martín, disintió por opinión separada, con la cual concurren los Jueces Asociados, Señores Ramírez Bages y Martínez Muñoz. El Juez Asociado, Señor Hernández Matos, no intervino.

—O—

Opinión disidente emitida por el Juez Asociado Señor Martín en la cual concurren los Jueces Asociados Señores Ramírez Bages y Martínez Muñoz

San Juan, Puerto Rico, a 12 de octubre de 1972

Me permito disentir. La cópula carnal entre el apelante y la hija de su medio hermano es precisamente la relación entre tío y sobrina que constituye delito bajo el Art. 275 del Código Penal de Puerto Rico por hallarse ellos en el tercer grado de consanguinidad, o sea, dentro de los grados de consanguinidad en que los matrimonios son declarados nulos por nuestra ley. 33 L.P.R.A. sec. 1115; 31 L.P.R.A. sec. 233(2).

Dicho Art. 275 de nuestro Código Penal dispone que:

"Las personas que hallándose dentro de los grados de consanguinidad en que los matrimonios son declarados nulos por la ley, se casaren, o cometieren concúbito o adulterio entre sí, incurrirán en pena de presidio por un término máximo de diez años."

Y, nuestro Código Civil, de origen español, declara nulos ciertos matrimonios, y en lo que es pertinente a este caso dispone en su Art. 71, lo siguiente:

"§ 233—Impedimento para contraer matrimonio
Tampoco podrán contraerlo entre sí:

.    .    .    .    .    .    .    .

2. Los colaterales por consanguinidad hasta el cuarto grado." (¹) 31 L.P.R.A. sec. 233 (2).

Como dijimos antes el acusado y la perjudicada eran tío y sobrina—tercer grado—y no medió matrimonio sino que mantuvieron relaciones carnales entre sí. La causa que es objeto de esta opinión va sólo dirigida contra el tío.

El Art. 275 de nuestro Código Penal es casi copia y trasunto fiel del Art. 285 del Código Penal de California, que reza así:

"Las personas que hallándose dentro de los grados de consanguinidad en que los matrimonios son declarados *incestuosos y nulos* por la ley, se casaren entre sí, o cometieren fornicación o adulterio el uno con el otro, serán castigados con prisión que no excederá de diez años en una prisión estatal." (Énfasis suplido.)

En California, los matrimonios incestuosos y nulos, los define el Art. 59 de su Código Civil como sigue:

"Matrimonios incestuosos—Los matrimonios entre padres e hijos, ascendientes y descendientes en todos los grados, entre hermanos de padre y madre y medio hermanos y entre tíos y sobrinas o tías y sobrinos son *incestuosos y nulos* desde su origen, ya fuere legítimo o ilegítimo el parentesco." (Énfasis suplido.)

Ahora bien, al adoptarse en Puerto Rico el Código Penal de California en 1902, se copió a manera de escolio al calce de nuestro Art. 275 (pero sin formar parte integrante del texto de dicho artículo), lo que constituye a todas luces un *lapsus* legislativo, una anotación que aparecía en el Código Penal *Anotado* de dicho estado, cuya anotación es copia textual de la disposición del Código Civil de California refe-

---

(¹) El Tribunal Superior con justa causa podrá dispensar, a instancia de parte, el matrimonio entre parientes de cuarto grado de consanguinidad —primos hermanos. 31 L.P.R.A. sec. 234.

rente a matrimonios nulos e incestuosos que hemos citado precedentemente. Dicha anotación no formaba parte del Código Penal de California sino que constituía una mera referencia, en la edición *anotada* de dicho Código Penal, a la definición de lo que constituía un matrimonio incestuoso en el referido estado de acuerdo con el Código Civil.

Las disposiciones citadas comprendidas en los Códigos Civiles de Puerto Rico y de California sobre la nulidad de matrimonios habidos entre personas que se hallen en ciertos grados de consanguinidad son sustancialmente similares. La diferencia de mayor importancia radica en que en nuestro Código Civil se extiende la nulidad hasta el cuarto grado, mientras que en California llega hasta el tercero. Toda vez que el escolio incorporado en nuestro Código Penal prohibe el matrimonio entre tíos y sobrinas y tías y sobrinos, y asumiendo que su propósito fue el de limitar el castigo penal a relaciones entre parientes hasta el tercer grado, el mismo es de aplicación en este caso, quedando fuera de su ámbito las relaciones entre primos hermanos. Ambas disposiciones tienen en común la prohibición del matrimonio entre tíos y sobrinas y tías y sobrinos.

La médula de la cuestión a resolver es si al mencionarse tíos y sobrinas, tanto en el referido escolio, como en nuestro Código Civil, cabe distinguir entre tíos y sobrinas de doble vínculo y de vínculo sencillo.

Nos parece que como se dijo en *State* v. *Reedy*, 44 Kan. 190, 24 Pac. 66, y se sostuvo en *People* v. *Womack*, 334 P.2d 309, el lenguaje del estatuto cuando se refiere a tíos y sobrinas debe interpretarse de acuerdo a su significado común [2] y ese significado común claramente incluye la relación aquí

---

[2] El Art. 559 de nuestro Código Penal, 33 L.P.R.A. sec 11, definición 11, dispone que las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso *común y corriente*. (Énfasis suplido.)

presente, tanto bajo el texto del ya mencionado escolio de nuestro Código Penal como del Art. 71 de nuestro Código Civil.

Ninguna de dichas disposiciones hace distinción alguna entre la doble o sencilla vinculación entre tíos y sobrinas. ([3])

*Ubix lex non distinguit, nec nos distinguiere debemus.*

El caso de *People* v. *Baker*, 442 P.2d 675 (1968) citado como antecedente persuasivo por la mayoría para sostener que el lenguaje de la anotación no incluye la relación de este caso, a mi juicio, no ha debido haberse seguido. ([4]) La con-

---

([3]) En nuestro ordenamiento jurídico los grados de parentesco se establecen en el Código Civil en sus disposiciones sobre la sucesión intestada. 31 L.P.R.A. secs. 2601 a 2609.

Al explicar los artículos del Código Español sobre parentesco equivalentes a los nuestros, en lo que es pertinente, dice Manresa que el parentesco es el vínculo o relación que une entre sí a varias personas, y añade que cuando se establece por la comunidad de origen entre las personas a quienes alcanza por correr en sus venas la misma sangre, por proceder de un tronco o progenitor común; se le llama "natural" o de consanguinidad; puede ser legítimo o ilegítimo y pueden clasificarse, uno y otro en parentesco de doble vínculo o de vínculo sencillo. Manresa, *Código Civil Español,* Arts. 915–919, págs. 94–95 (ed. 1955).

A los fines de la computación de los grados de parentesco comenta Manresa que "en la línea colateral hay siempre dos ramas, y en ambas han de contarse las generaciones, subiendo en una del causante al tronco común, y bajando en la otra desde ese tronco hasta el que aspira a suceder." "Así", dice Manresa, "los hermanos proceden de un mismo padre o madre; el padre o la madre es, pues el tronco común, de un hermano a su padre media una generación o grado; los hermanos se hallan pues, en segundo grado de parentesco . . . . Entre tío y sobrino hay tres grados." (Manresa, ante, págs. 96, 97.)

La computación en cuanto a los grados de parentesco rige para todas las materias sin excepción según provee específicamente el Código Civil. 31 L.P.R.A. sec. 2605. Esto significa naturalmente que a los fines de establecer la relación entre las personas cuyos matrimonios están prohibidos por ley se aplica obligatoriamente el método cómputo de los grados contenido en el articulado del Código Civil que hemos explicado.

([4]) Las decisiones de la Corte Suprema del estado de California dictadas con posterioridad a la fecha en que adoptamos de dicho estado nuestro Código Penal tan sólo tienen fuerza persuasiva en esta jurisdicción. Véanse, *Pueblo* v. *Pacheco,* 83 D.P.R. 526 (1961); *Corretjer* v. *Tribunal de Distrito,* 72 D.P.R. 754 (1951).

clusión a que se llega en ese caso representa la opinión minoritaria en los Estados Unidos en esta materia y así lo reconoció allí el propio Tribunal. Véase además *Sexual Intercourse between Persons Related by Half Blood as Incest*, anotación, 72 A.L.R.2d 706. Si bien como se señala en el caso de *Baker*, supra, las relaciones comprendidas dentro del delito de incesto dependerán del estatuto particular del estado, aun dentro de las decisiones de estados en donde el delito de incesto está definido en forma similar al estatuto civil de California y, por ende, similar al escolio de nuestro Código Penal, la decisión de *Baker*, supra, resulta ser minoritaria. En los casos de *State* v. *Reedy*, supra; *State* v. *Guiton*, 51 La. Ann. 155, 24 So. 784; *State* v. *Harris*, 149 N.C. 513, 62 S.E. 1090, en donde el estatuto distinguía entre hermanos de doble vínculo y hermanos de un solo vínculo pero no así entre tíos y sobrinas o tías y sobrinos, tal y como lo hace nuestro escolio, se resolvió que la relación sexual entre un tío y la hija de un medio hermano de éste estaba contenida en la definición de incesto.

El caso de *Rodríguez* v. *Díaz*, 65 D.P.R. 285, 293 (1945) en que se apoya la mayoría de este Tribunal para dictar la opinión que es objeto de este disenso en el que está envuelta la relación entre primos hermanos, así como la cita que en dicho caso se hace de la doctrina juiciosa adoptada en el caso de *State* v. *Couvillion* (1906 La.) 42 So. 431 tienen nuestra aprobación. Pero el caso de *Couvillion* es distinguible del caso de autos. Allí se trataba de la aplicación de un estatuto penal de 1884 que castigaba el incesto entre personas dentro de ciertos grados de consanguinidad consignados en el Código Civil entonces vigente en Louisiana pero que no incluían a los primos hermanos. Al enmendarse en 1900 el Código Civil de dicho estado se incluyeron los primos hermanos entre las relaciones prohibidas y el citado caso de *Couvillion*, cuyos hechos ocurrieron luego de la enmienda al Código Civil, resolvió que la disposición penal de 1884 nunca contempló incluir

a los primos hermanos. Era de rigor y aplaudimos la interpretación restrictiva que dicho caso adoptó. El principio de interpretación restrictiva seguido en los casos de *Rodríguez* v. *Díaz* y *Couvillion,* supra, no es aplicable al caso de autos por las razones ya explicadas en el curso de este disenso.

La prohibición contra la relación incestuosa, desde Aristóteles, se considera que era un valladar contra la concupiscencia lujuriosa, que, de no existir tal prohibición, transformaría el puro amor familiar en ocasión de práctico y frenético libertinaje. Véase *Diccionario de Derecho Privado,* pág. 1114, Editorial Lalor, 1954. Compete a la Legislatura y no a este Tribunal, la función de modificar legislación que comprende medidas de orden público, como la aquí envuelta, que responde a la tradición moral de la institución familiar puertorriqueña. La sentencia apelada ha debido confirmarse.