En el Tribunal Supremo de Puerto Rico

| WILSON FELICIANO POLANCO<br>    Demandante-recurrido<br><br>    V.<br><br>MIGUEL FELICIANO GONZALEZ Y OTROS<br><br>    Demandado-recurrente | Revisión<br><br>99TSPR22 |
| --- | --- |

Número del Caso: RE-94-488

Abogados de la Parte Recurrente: Lic. Domingo Emanuelli Hernández

Abogados de la Parte Recurrida: Lic. Carlos L. Lorenzo Quiñones

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Aguadilla

Juez del Tribunal de Primera Instancia: Hon. Miguel A. Montalvo Quiñones

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 3/17/1999

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilson Feliciano Polanco

Demandante-Recurrido

v.                                                    RE-94-488          Revisión

Miguel Feliciano González
y otros

Demandados-Recurrentes

SENTENCIA

San Juan, Puerto Rico, a 17 de marzo de 1999

El 28 de septiembre de 1994, el antiguo Tribunal Superior, Sala de Aguadilla, dictó sentencia en la cual condenó a la parte demandada al pago de $105,982.62 en daños y perjuicios más $20,000.00 en honorarios de abogado. De esta sentencia recurre ante nos la parte demandada, solicitando que revisemos las partidas concedidas por resultar ser extremadamente elevadas y que, además, tratándose de un accidente de tránsito, apliquemos las deducciones correspondientes de la A.C.A.A.

A continuación exponemos los hechos que dieron lugar a la referida sentencia y procedemos a resolver los planteamientos de la recurrente.

I

El 3 de marzo de 1992, el señor Wilson Feliciano Polanco, aquí demandante-recurrido, fue impactado en la rodilla derecha por un vehículo de motor perteneciente al Municipio de Utuado y conducido en el desempeño de sus funciones regulares por el Guardia Municipal, señor Miguel Rivera González.  El impacto ocurrió cuando el señor Feliciano cruzaba a pie la vía por la cual transitaba el Oficial Rivera González y, según las determinaciones del Tribunal sentenciador, dicho accidente fue el resultado de la negligencia combinada de ambos.

El impacto sufrido por el señor Feliciano le produjo una lesión de desgarre del ligamento cruzado anterior que requirió tratamiento con un neurocirujano, un fisiatra y un terapista físico, además de una cirugía de reconstrucción del ligamento en la que se le injertó un ligamento de hueso extraído de un tendón que no había sufrido por el impacto.  Aun así, el señor Feliciano quedó con una incapacidad permanente en su rodilla que le impide desempeñarse en el campo de la construcción como lo hacía antes del impacto.  No obstante, según la prueba pericial, su incapacidad no le impide desempeñarse en otras labores para las cuales podría recibir adiestramiento, siempre y cuando éstas no le exijan un esfuerzo físico como el del trabajo de construcción. Tampoco está incapacitado para caminar, correr bicicleta, subir y bajar escaleras y practicar algunos deportes como la natación.  En fin, el señor Feliciano quedó con una incapacidad física permanente que en su caso resulta ser severa por el efecto que tiene sobre su habilidad para desempeñarse en su ocupación habitual.

A la fecha de este accidente, el señor Feliciano tenía 34 años de edad, poseía un décimo grado de escolaridad y se desempeñaba como obrero de construcción y albañil, devengando el salario mínimo federal ($5.25 por hora).  Testificó que ese trabajo era el único que sabía realizar; el único que había realizado durante los últimos diez (10) años y que desde el accidente no había podido trabajar.

II

Con estos hechos ante sí, el antiguo Tribunal Superior dictó sentencia imputándole un setenta por ciento (70%) de negligencia a la parte demandada y un treinta por ciento (30%) de negligencia a la parte demandante.  Valoró los daños físicos, sufrimientos y angustias mentales de la parte demandante en $50,000.00 y calculó su lucro cesante en $101,403.74. Finalmente, condenó a la parte demandada al pago de $20,000.00 en honorarios de abogado.

Los demandados-recurrentes cuestionan las cuantías concedidas por entender que resultan excesivas.

III

En cuanto a la partida de $50,000.00 concedida por el Tribunal de Instancia en concepto de los daños físicos y mentales sufridos por el señor Feliciano, los demandados  exageradas, son elevadas a tenor con lo resuelto por esta Honorable Superioridad en el caso Saurí vs. Colón, 91 JTS 14 (1991) y Ruiz vs. Sears, 100 D.P.R. 867 [sic] (1972)."[1]

Hemos examinado los casos citados por los recurrentes y concluimos que respaldan la confirmación de la partida concedida por el tribunal sentenciador en concepto de daños físicos y mentales.  En primer lugar, mediante la sentencia del caso Saurí v. Colón [2], modificamos una partida de daños mentales porque entendimos que la prueba de la parte demandante no justificaba la suma otorgada.  Al llegar a esta determinación citamos la norma prevaleciente en cuanto a nuestra intervención con la valorización de los daños y perjuicios por parte de los tribunales de instancia y concluimos que la parte recurrente había cumplido con la obligación que dicha norma le impone.  Citando de Rodríguez Cancel v. A.E.E.[3] expresamos:

> ...No hay duda que en relación con esta difícil y angustiosa labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama.  Publio Díaz v. E.L.A., 106 D.P.R. 582 (1978).  Ahí la razón para la norma de abstención judicial; esto es, de que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas, Valldejuli Rodríguez v. A.A.A., 99 D.P.R. 917, Urrutia v. A.A.A., supra, y de que la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas.  Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978).  (Énfasis suplido)

A diferencia del caso citado, en el caso de autos los recurrentes no han demostrado una sola circunstancia que haga meritoria la modificación de la suma que concedió el tribunal a quo. De hecho, los mismos recurrentes reconocen que la suma no resulta exageradamente alta, sino únicamente elevada.  Como consecuencia, no podemos modificar la suma impugnada usando como base la norma del caso de Saurí v. Colón[4].

En segundo lugar, los recurrentes citan a Ruiz Guardiola v. Sears Roebuck[5].  Este es otro caso en el cual modificamos las cuantías concedidas por el Tribunal de Instancia por no estar justificadas por la prueba.

---

[1] Solicitud de Revisión a la pág. 7.

[2]  Supra.

[3]  116 D.P.R. 443, 451 (1985).

[4]  Supra.

[5] 111 D.P.R. 817 (1972).

Sin embargo, al igual que con el caso de <u>Saurí</u> v. <u>Colón</u>[6] y a diferencia del caso de autos, en el caso citado la parte recurrente nos demostró aquellas circunstancias que justificaron nuestra conclusión de que el Tribunal de Instancia había actuado erróneamente.

En fin, en el caso ante nos la parte recurrente no ha invocado elemento alguno que justifique nuestra intervención para modificar la suma impuesta para la compensación de los daños físicos y sufrimientos mentales sufridos por el señor Feliciano.  El error señalado en este sentido, no fue cometido.

V

En cuanto a la partida por concepto de lucro cesante, el Tribunal de Instancia dispuso como sigue:

> Tomando en cuenta el impedimento médico que padece el demandante y las limitaciones que ello implica a su capacidad como obrero no diestro, su falta de destrezas físicas y mentales para desempeñarse en labores distintas a las que hacía antes del accidente, se concluye que está incapacitado para generar ingresos en el área de la construcción.  Tenemos motivos suficientes para dudar que pueda encontrar empleo remunerado en otras áreas que no sean las que había desempeñado antes del accidente.[7]

Partiendo de lo anterior, el tribunal computó el lucro cesante para treinta y un años (31) de vida útil que se esperaba que el señor Feliciano hubiera tenido a no ser por la incapacidad que le causó el impacto a la rodilla.

Esta determinación la impugnan los recurrentes por entender que la prueba demostró que el señor Feliciano sí estaba capacitado para conseguir trabajo en otro campo que no fuera el de la construcción.  Sostienen que "el Tribunal de Instancia hizo el cálculo matemático según la jurisprudencia establecida, sin embargo, obvió que la prueba médica que tenía ante sí era indicativa de que este señor no estaba incapacitado y que podía rehabilitarse para trabajar en otras funsiones [sic]; entendemos que el Tribunal de Instancia se equivocó al declarar que este señor estaba incapacitado totalmente para ejercer cualquier función elevando exageradamente la partida que concedió por lucro cesante y resultando éste [sic] improcedente en derecho."[8]

Tienen razón los recurrentes.  A pesar de que como norma general no intervendremos con las determinaciones de hechos y adjudicación de credibilidad del Tribunal de Instancia en ausencia de error manifiesto, pasión, prejuicio o parcialidad[9], en el caso de autos se trata de una situación excepcional.  En primer lugar, porque la prueba pericial aportada por el Dr. Manuel Benítez Corujo, testigo de los demandantes-

---

[6] Supra.

[7] Sentencia a la pág. 6.

[8] Alegato de Revisión a la pág.7.

[9] <u>Quiñones López</u> v. <u>Manzano Pozas</u>, 96 J.T.S. 95, del 25 de junio de 1996; <u>Vélez</u> v. <u>Srio. de Justicia</u>, 115 D.P.R. 533 (1984); <u>Ramos Acosta</u> v. <u>Caparra Dairy, Inc.</u>, 113 D.P.R. 357 (1982).

recurridos, demostró que "en su opinión Wilson se puede rehabilitar en otra profesión..."[10] y que "la incapacidad que tiene el Sr. Wilson Feliciano Polanco es que éste no puede parar de golpe o cambiar de dirección súbitamente y que por eso está incapacitado para ser albañil."[11]  Y, en segundo lugar, porque entendemos que el tribunal cometió un error manifiesto al evaluar la prueba que le llevó a determinar que el señor Feliciano no podía conseguir otro empleo que no fuera como obrero de la construcción.  Ello es así ya que el propio demandante, señor Feliciano, admitió que ha realizado otras tareas que no son de albañil, como por ejemplo, en la Ferretería Martínez y en una fábrica en los Estados Unidos.  Además, ni el demandante ni los demás testigos declararon que el señor Feliciano estuviera incapacitado para realizar otras tareas remunerables.

Por otro lado, no hay duda de que el demandante dejó de devengar ingresos durante el tiempo en que estuvo hospitalizado y en recuperación, lo cual debió haber sido computado y concedido por el tribunal de instancia en su sentencia.  Asimismo, el tiempo que le tome conseguir otro trabajo, incluyendo cualquier período de readiestramiento para ello,  y el hecho de que sus posibilidades de empleo futuro pudieran ser únicamente en trabajos de menor remuneración que su antigua ocupación de albañil, constituirían pérdidas que de haber sido probadas, deben compensarse como parte del lucro cesante.[12]

Procede, pues, devolver este asunto al tribunal de instancia para que se dilucide allí, a base de la correspondiente evidencia, la controversia respecto a la reducción real de ingresos y el lucro cesante del demandante conforme a los pronunciamientos que anteceden.

VI

Por último, examinamos si erró el antiguo Tribunal Superior al condenar a los demandados al pago de $20,000.00 en honorarios de abogado.  Al así hacerlo, mantenemos en cuenta que la determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción.  Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción.[13]

La Regla 44.1 de las de Procedimiento Civil dispone lo siguiente en cuanto a los honorarios de abogado:

---

[10] Exposición Narrativa de la Prueba, a la pág. 2.

[11] Id., a la pág. 3. Obsérvese que también es norma trillada que ante prueba documental o pericial no aplica la norma de no intervención con la apreciación de la prueba hecha por los foros de instancia porque estamos en igual posición adjudicativa. Fernández v. Hosp. Gen. San Carlos, Inc., 113 D.P.R. 761, 773 (1983) y casos allí citados.

[12] Díaz v. Alcalá, Op. de 28 de mayo de 1996, 96 J.T.S. 79.

A[...]

>(d) Honorarios de abogado. En caso que cualquier parte haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.[14]

Surge de esta disposición que la concesión de honorarios de abogado no está contemplada en nuestro ordenamiento como un premio a la parte que prevalece en un pleito, sino más bien, como una sanción dirigida a una parte que con su actitud temeraria ha actuado en forma irrazonable o extremadamente litigiosa, afirmando hechos o conduciéndose sin fundamentos o motivos "con conciencia de la propia sin razón."[15] Así, la norma general vigente en nuestro ordenamiento procesal civil es que la imposición de honorarios de abogado procede únicamente cuando una parte manifiesta una actitud obstinada "que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio."[16] Por el contrario, cuando no existe esta actitud caracterizada por la temeridad, los tribunales no pueden condenar al pago de honorarios sólo porque una parte no ha prevalecido en su postura.[17]

Al amparo de lo anterior, hemos resuelto que existe temeridad cuando por los actos de una parte se hace necesario un pleito que se pudo evitar; se prolonga un pleito innecesariamente; o se produce la necesidad de que otra parte incurra en gestiones evitables. A modo de ejemplo, constituyen actos temerarios los siguientes: cuando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto.[18]

---

[13] Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339 (1989).

[14] 32 L.P.R.A. Ap. III R. 44.1.

[15] Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351, 355 (1989); Corpak y Art Printing v. Ramallo Brothers, 125 D.P.R. 734 (1990). Véase también Antonio J. Amadeo Murga, El Valor de los Daños en la Responsabilidad Civil, Tomo II, págs. 1215 a la 1218 (1997).

[16] H. Sánchez, Rebelde sin Costas, 4(2) Boletín Judicial 14 (1982), citado en Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987).

[17] Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Santos Bermúdez v. Texaco Puerto Rico, Inc., supra; Fernández v. San Juan Cement Co., Inc., supra.

[18] Fernández v. San Juan Cement Co., Inc., supra (citas omitidas); Pérez

Finalmente, hemos establecido que al fijar la cuantía de honorarios de abogado, el tribunal debe tomar en cuenta los siguientes factores: la naturaleza del litigio; las cuestiones de derecho envueltas en el mismo; la cuantía en controversia; el tiempo invertido; los esfuerzos y actividad profesional que hayan tenido que desplegarse; y la habilidad y reputación de los abogados envueltos.

Es decir, su cálculo no tiene que ser equivalente al valor real de los servicios prestados o pagados, "sino con aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios."[19]

Tras el estudio de los autos y el análisis de los trámites procesales acontecidos en este caso, estamos convencidos de que el antiguo Tribunal Superior no abusó de su discreción al condenar a los demandados al pago de honorarios de abogado. La parte demandada negó haber incurrido en responsabilidad alguna aún cuando era fácil advertir de los hechos presentes en este caso la negligencia parcial de dicha parte. No obstante, nos parece que la cuantía impuesta por tal concepto es exageradamente alta a la luz de la totalidad de las circunstancias presentes en el caso de marras. Dicha parte no estaba exenta totalmente de justificación al litigar este caso pues resultó ser que el señor Figueroa contribuyó a sus daños con su propia negligencia. Tampoco pudo éste establecer, como ya hemos señalado, una de las partidas de los daños reclamados.

## VII

Por los fundamentos antes expuestos se deja sin efecto la compensación concedida por concepto de lucro cesante y se devuelven al Tribunal de Primera Instancia los autos originales para la determinación de dicha partida, así como la de los ingresos realmente dejados de devengar por el demandante, a tenor con los pronunciamientos que aquí hemos hecho. Se modifica, además, la sentencia dictada por dicho tribunal para reducir a $10,000.00 la partida impuesta por concepto de honorarios de abogado y para aplicar la correspondiente deducción de $1,000.00 dispuesta en la sec. 9 (3)(b) de la Ley de Compensación por Accidentes del Trabajo; 9 L.P.R.A sec. 2058 (3)(b), a la partida concedida por concepto de lesiones corporales (daños físicos y mentales).

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fúster Berlingeri emitió opinión de conformidad. El Juez Asociado señor Negrón García no interviene.

Isabel Llompart Zeno

---

Cruz v. Hosp. La Concepción, 115 D.P.R. 721 (1984).

[19] Velázquez Ortiz v. U.P.R., op. del 5 de abril de 1991, 91 JTS 36; Corpak, Art Printing v. Ramallo Brothers, *supra*; Asoc. De Condóminos v. Trelles Reyes, 120 D.P.R. 574, 579 (1988).

Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilson Feliciano Polanco

    Demandante-Recurrido

      Vs.                         RE-94-488        REVISION

Miguel Feliciano González
y Otros

    Demandados-Recurrentes

Opinión de conformidad emitida por el Juez Asociado señor Fuster Berlingeri.

        San Juan, Puerto Rico, a 17 de marzo de 1999.

      Estoy conforme con la sentencia emitida por el Tribunal en el caso de autos; pero creo conveniente ampliar brevemente lo resuelto en ella, sobre uno de los aspectos de la compensación por concepto de <u>lucro cesante</u>, para que se entienda sin equívocos lo que estamos determinando.

      De los autos surge que aunque el demandante no podrá volverse a emplear en la misma ocupación de albañil que había tenido durante los últimos diez años de su vida, el accidente de tránsito que sufrió éste no lo dejó totalmente incapacitado para ejercer algún otro trabajo. El propio demandante admitió que después del accidente ha realizado otras tareas

remunerables que no son las de albañil.  En vista de lo anterior, es evidente que el foro de instancia no podía concederle al perjudicado una partida por lucro cesante fundamentada en la premisa de que éste no volvería a desempeñar empleo remunerado nunca más en su vida útil.  Tal determinación era claramente contraria a los hechos del caso.

**Sin embargo, lo anterior no significa que el perjudicado no tenga ningún derecho a indemnización por concepto de lucro cesante, como alegan los recurrentes**.  Es posible que las limitadas tareas laborables que el demandante pueda desempeñar después del accidente no sean tan remunerables como las del oficio de albañil que tenía el demandante lesionado antes del accidente, en cuyo caso éste tiene derecho a alguna reparación, por razón de lucro cesante.  Es decir, si las posibilidades de empleo futuro del demandante por causa del accidente son únicamente en trabajos de menor remuneración que los de albañil, éste ha sufrido un daño indiscutible en cuanto a su habilidad para obtener ingresos, que debe compensarse como lucro cesante.  En efecto, reiteradamente hemos resuelto que el lucro cesante es un remedio para el "cese o **disminución** de los ingresos de una persona"; y que son reparables "la pérdida total o **parcial** de su capacidad productiva", Díaz v. Alcalá,    140 D.P.R. ___, Op. del 28 de mayo de 1996, 96 JTS 79;  Sucn. Pacheco v. Eastern Medical Association, Inc., 135 D.P.R. ___, Op. del 6 de abril de 1994, 94 JTS 49; Rodríguez v. Ponce Cement, 98 D.P.R. 194 (1969).

En una ocasión anterior, tuvimos ante nos una situación muy parecida a la del caso de autos, en lo que aquí nos concierne.  Allí se trataba de un carpintero que sufrió una incapacidad parcial permanente como resultado de un accidente, que le impedía volver a desempeñar su anterior oficio.  Después del accidente sólo podía trabajar de conserje. Estuvimos conforme entonces que el lucro cesante debía determinarse a base de la diferencia entre el ingreso que derivaba antes del accidente y el ingreso menor que había podido obtener después del accidente. Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982).

A la luz de lo anterior, pues, no procede que se elimine <u>totalmente</u> la partida de lucro cesante que había otorgado el foro de instancia al demandante lesionado en el caso de autos.  Como dicho foro llegó a la conclusión errada de que el demandante estaba incapacitado para ocupar cualquier otro trabajo, dicho foro no consideró la cuestión referida relativa a una disminución <u>parcial</u> de su capacidad productiva.  Por tanto, procede que se devuelva el caso de autos al foro de instancia para que se dilucide allí, con arreglo a la prueba correspondiente, si la indudable incapacidad del demandante para desempeñarse como albañil apareja una <u>reducción</u> en los ingresos que podrá generar durante el resto de su vida útil, en cuyo caso el foro de instancia debe conceder la partida correspondiente por concepto de lucro cesante.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO