TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-605 |
| of | : | |
| | : | May 15, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE CURT PRINGLE, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

Does state law prohibit indirect harm to a state-listed endangered or threatened species by way of habitat modification?

CONCLUSION

State law does not prohibit indirect harm to a state-listed endangered or threatened species by way of habitat modification.

ANALYSIS

In 1984 the Legislature enacted the California Endangered Species Act (Fish & G. Code, §§ 2050-2098; "Act.")[1] The objects of the legislation are set forth in section 2051, which provides as follows:

"The Legislature hereby finds and declares all of the following:

_____

[1]Unidentified section references herein are to the Fish and Game Code.

"(a) Certain species of fish, wildlife, and plants have been rendered extinct as a consequence of man's activities, untempered by adequate concern and conservation.

"(b) Other species of fish, wildlife, and plants are in danger of, or threatened with, extinction because their habitats are threatened with destruction, adverse modification, or severe curtailment, or because of overexploitation, disease, predation, or other factors.

"(c) These species of fish, wildlife, and plants are of ecological, educational, historical, recreational, esthetic, economic, and scientific value to the people of this state, and the conservation, protection, and enhancement of these species and their habitat is of statewide concern."

In addressing these concerns, the Legislature expressly prohibited certain activities. Section 2080, the subject of this opinion, states:

"No person shall import into this state, export out of this state, or take, possess, purchase, or sell within this state, any species, or any part or product thereof, that the commission determines to be an endangered species or a threatened species, or attempt any of those acts, except as otherwise provided in this chapter, the Native Plant Protection Act (Chapter 10 (commencing with Section 1900) of this code), or the California Desert Native Plants Act (Division 23 (commencing with Section 80001) of the Food and Agricultural Code)."

The present inquiry is whether indirect harm to a state-listed endangered or threatened species resulting from habitat modification which actually kills or injures one or more members of an endangered or threatened species by significantly impairing essential behavioral patterns, including breeding, feeding, or sheltering, is prohibited by section 2080. We conclude that it is not.

Of principal concern for purposes of this discussion is the significance of the word "take" as used in section 2080. "Take" is not defined in the Act itself. However, section 86 provides: "`Take' means hunt, pursue, catch, capture, or kill, or attempt to hunt, pursue, catch, capture, or kill." Section 2 additionally provides:

"Unless the provisions or the context otherwise requires, these definitions, rules of construction, and general provisions shall govern the construction of this code and all regulations made or adopted under this code."

We perceive no basis for departing from the definition of "take" contained in section 86 when interpreting the language of section 2080. (See *Department of Fish and Game* v. *Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1562, fn. 6.)

It is evident that the words "hunt," "pursue," "catch," and "capture" in section 86 each connote a particular activity and purpose beyond the act of habitat modification alone. Hence, the

critical issue is whether the remaining word "kill" contained in the statute includes the death of one or more members of a species by way of habitat modification.

In answering this question, we may rely upon established principles of statutory interpretation. Under the principle of construction known as *noscitur a sociis*, a word may be interpreted by reference to the words with which it is associated. (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160.) The words associated with "kill" in section 86 -- "hunt," "pursue," "catch," and "capture" -- may only be accomplished directly upon the object of each such activity. Hence, under the *noscitur a sociis* doctrine, the term "kill" as defined in section 86 and applied in section 2080 means to act directly upon one or more members of an endangered species, causing its death.[2]

It is to be recognized that the direct destruction of a species even when not involving hunting or fishing may constitute a "taking" for purposes of section 2080. In *Department of Fish & Game* v. *Anderson-Cottonwood Irrigation Dist., supra*, 8 Cal.App.4th 1554, it was held that the prohibition of section 2080 was applicable to the killing of salmon drawn into an irrigation district's pumping facility on the Sacramento River. The court determined that the Act may be violated without regard to any specific intent to hunt or fish and should not "be construed to allow the wholesale killing of endangered species simply because the mode of death does not involve hunting or fishing." (*Id.*, at pp. 1563-1564.)

That is not to say, however, that a violation of the Act may be proved without a direct act of killing within the meaning of section 86.[3] In this regard, it is clear that when the Act was enacted (Stats. 1984, ch. 1240, § 2), the Legislature was specifically aware of the broad provisions of the federal Endangered Species Act (16 U.S.C. § 1531 et seq.). In the report of the Assembly Committee on Water, Parks, and Wildlife dated April 24, 1984, for example, it was stated that one of the general purposes of the proposed legislation was to ". . . incorporat[e] key provisions and concepts of the federal Endangered Species Act into state law." At that time, the federal legislation defined "take" to include, among other things, "harass, harm, pursue [or] kill. . . ." (16 U.S.C. § 1532(19)). The Legislature was cognizant not only of this broad federal statutory definition, but also of the inclusion by federal regulation of "significant habitat modification or degradation where it actually kills or injures wildlife" in administratively defining the term "harm." The implementing federal regulation provided:

> "*Harm* in the definition of `take' in the Act means an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation

---

[2] The prohibition against the "taking" of certain birds, mammals, or fish has appeared for decades in numerous provisions throughout the Fish and Game Code. (See, e.g., §§ 2000, 3503, 3503.5, 3505, 3513, 4012, 4330, 4700, 4800, 5000, 5020, 5502, 5503, 5517, 8150.5, 8599.) We have not been apprised or are we aware of any prosecution or enforcement action with respect to these statutes based on an indirect taking by way of habitat modification.

[3] In *Department of Fish & Game* v. *Anderson-Cottonwood Irrigation Dist., supra.*, 8 Cal.App.4 at 1558-1559, 1568, the court focused upon the direct destruction of a species under section 2080 and chose not to consider a claim of indirect harm relevant under the federal Endangered Species Act (16 U.S.C. § 1531 et seq.).

where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."  (50 C.F.R. § 17.3.)

Further, the fact that the federal regulation included habitat modification in the definition of the term "harm" was already judicially observed.  (*Palila* v. *Hawaii Dept. of Land & Natural Resources* (9th Cir. 1981) 639 F.2d 495, 497.)  Thus, we find that the proposed state legislation, as amended in the Assembly on April 23, 1984, would have added section 2066 to expand the definition of "take" in the Act to include "harass, harm . . . ."   However, on August 6, 1984, the proposed definitional expansion was deleted in the Senate.  These events suggest that the Legislature was aware of the broader federal definition and intentionally departed from it.  (See *California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3 1, 17; *City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 88-89; *Central Delta Water Agency* v. *State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 634; 75 Ops.Cal.Atty.Gen. 256, 258 (1992); 64 Ops.Cal.Atty.Gen. 425, 433-434 (1981).)

Of course, the provisions of section 86, enacted in 1957 (Stats. 1957, ch. 456), could not possibly have been intended or designed to conform with the federal counterpart.  Hence, whatever independent significance the word "harm" may have in federal law,[4] it was designedly excluded from the Act.

It would have been anomalous, however, for the Legislature to specifically refer to habitat modification in its findings and declarations in section 2051 without further reference to that subject in the Act.  The Legislature has specifically addressed the remedies to be undertaken when habitat modification is threatened.  For example, in providing for consultation between the Department of Fish and Game and a state agency which has principal responsibility for carrying out or approving a project subject to the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.), section 2090 provides as follows:

"(a)  Each state lead agency shall consult with the department, in accordance with guidelines developed by the department, to ensure that any action authorized, funded, or carried out by that state lead agency is not likely to jeopardize the continued existence of any endangered or threatened species.

"(b)  Whenever the department consults with a state lead agency . . . , the department shall issue a written finding based on its determination of whether a proposed project would jeopardize the continued existence of any endangered species or threatened species *or result in the destruction or adverse modification of habitat essential to the continued existence of the species*.  The written finding shall also include the department's determination of whether a proposed project would result in any taking of an endangered species or a threatened species incidental to the proposed project.  The department shall base its determination on the best available scientific information."  (Emphasis added.)

---

[4]This issue is now pending in the United States Supreme Court.  (*Sweet Home Chapter* v. *Babbitt* (D.C.Cir. 1994) 17 F.3d 1463, cert. granted.)

Section 2091 provides:

> "If jeopardy is found, the department shall determine and specify to the state lead agency reasonable and prudent alternatives consistent with conserving the species which would prevent jeopardy to the continued existence of the species *or the destruction or adverse modification of the habitat essential to the continued existence of the species*. . . . If a taking incidental to the project is found, the department shall determine and specify to the state lead agency reasonable and prudent measures that are necessary and appropriate to minimize the adverse impacts of the incidental taking.

> "Any taking that is in compliance with the alternatives or measures specified under this subdivision is not prohibited by this chapter."   (Emphasis added.)

Of interest here is the distinction which is drawn in section 2090 between a determination that a proposed project would "result in the destruction or adverse modification of habitat essential to the continued existence of a species" and a determination that a project "would result in any taking of an endangered species."[5]

Finally, it is to be observed that a violation of the Act is punishable by a fine or imprisonment or both.  (§ 12008.)  It is well settled that when language reasonably susceptible of two constructions is used in a penal statute, ordinarily that construction which is more favorable to the offender will be adopted.  (*People* v. *Bransford* (1994) 8 Cal.4th 885, 898.)

We believe that the prerogative to determine whether the concept of habitat modification should be included within the definition of "take," as that term is used in section 2080, resides in the Legislature and not in this office under the guise of statutory interpretation.  (See *People* v. *Dillon* (1983) 34 Cal.3d 441, 463; *People* v. *Russell* (1971) 22 Cal.App.3d 330, 335.)   It is concluded that the Act does not prohibit indirect harm to endangered or threatened species by way of habitat modification.

\* \* \* \* \*

---

[5]The references in sections 2090 and 2091 to a taking "incidental" to a proposed project do not connote an indirect taking.  Rather, the references to an "incidental" taking elsewhere in the Fish and Game Code are to direct takings in the course of lawful activities.  (See, e.g., §§ 8150.5, 8599, 8609; Stats. 1993, ch. 1174, § 1; see also *Department of Fish & Game* v. *Anderson-Cottonwood Irrigation Dist., supra*, 8 Cal.App.4th at 1558.)